720 A.2d 1032

Ronald B. EMERICH, Administrator of the Estate
of Teresa M. Hausler, Appellant,

v.

PHILADELPHIA CENTER FOR HUMAN DEVELOPMENT,
INC. and Albert Einstein Medical Center, Appellees.

Ronald B. EMERICH, Administrator of the Estate
of Teresa M. Hausler, Appellant,

v.

PHILADELPHIA CENTER FOR HUMAN DEVELOPMENT,
INC., Albert Einstein Healthcare Foundation, Albert Einstein
Medical Center, Harvey Friedrich, ACSW, Anthony J. Scuderi,
M. Div., Cac and Hacan Ulus, Administratrix of the Estate of
Ahmet Ulus, M.D., Appellees.

Supreme Court of Pennsylvania.

Argued Dec. 11, 1996.

Decided Nov. 25, 1998.

Reargument Denied Jan. 13, 1999.

210

212

David W. Fischer, Philadelphia, for Ronald B. Emerich.

Paul A. Lauricella, Philadelphia, for Amicus, PA Trial Lawyers.

Joseph Goldberg, Deborah L. Doyle, Philadelphia, for Hacan Ulus.

Claire Neiger, for Albert Einstein Health Care Foundation, Harvey Freidrich and Albert Einstein Medical Center.

Peter S. Miller, Charles W. Craven, Philadelphia, for Phila. Center for Human Development and Anthony J. Scuderi.

Robert B. Hoffman, Harrisburg, for Amicus, Pa. Medical Soc.

Nory Miller, Washington, DC, for Amicus, Pa. Psych. Ass'n.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

CAPPY, Justice.

We granted allocatur limited to the issues of one, whether a mental health professional has a duty to warn a third party of a patient's threat to harm the third party; two, if there is a duty to warn, the scope thereof; and finally, whether in this case a judgment on the pleadings was proper.

This admittedly tragic matter arises from the murder of Appellant's decedent, Teresa Hausler, by her former boyfriend, Gad Joseph ("Joseph"). At the time of the murder, Joseph was being treated for mental illness and drug problems. Appellant brought wrongful death and survival actions against Appellees. Judgment on the pleadings was granted in favor of Appellees by the trial court and was affirmed on appeal by the Superior Court.

 A detailed recitation of the facts is necessary to analyze the complex and important issues before us. The factual allegations raised in Appellant's complaint, which we must accept as true, are as follows.[1]

---

1. The standard of review of an appellate court in passing on a challenge to the sustaining of a judgment on the pleadings pursuant to Pa.R.C.P. 1034, is limited. A judgment on the pleadings will be granted where,

Ms. Hausler and Joseph, girlfriend and boyfriend, were cohabitating in Philadelphia. For a substantial period of time, both Ms. Hausler and Joseph had been receiving mental health treatment at Appellee Philadelphia Center for Human Development (the "Center" or "PCHD"), which is owned and operated by Appellees Albert Einstein Healthcare Foundation and Albert Einstein Medical Center. Appellee Ahmet Ulus, now deceased, was a psychiatrist at the Center, Appellee Anthony Scuderi was a counselor at the Center, and Appellee Harvey Friedrich was the executive director of the Center.

Joseph was diagnosed as suffering from, among other illnesses, post-traumatic stress disorder, drug and alcohol problems, and explosive and schizo-affective personality disorders. He also had a history of physically and verbally abusing Ms. Hausler, as well as his former wife, and a history of other violent propensities. Joseph often threatened to murder Ms. Hausler and suffered from homicidal ideations.

Several weeks prior to June 27, 1991, Ms. Hausler ended her relationship with Joseph, moved from their Philadelphia residence, and relocated to Reading, Pennsylvania. Angered by Ms. Hausler's decision to terminate their relationship, Joseph had indicated during several therapy sessions at the Center that he wanted to harm Ms. Hausler.

On the morning of June 27, 1991, at or about 9:25 a.m., Joseph telephoned his counselor, Mr. Scuderi, and advised him that he was going to kill Ms. Hausler. Mr. Scuderi immediately scheduled and carried out a therapy session with Joseph

on the facts averred, the law says with certainty that no recovery is possible. *Bensalem Township School District v. Commonwealth*, 518 Pa. 581, 544 A.2d 1318 (1988). Principles applicable to a judgment on the pleadings are the same as the principles applicable to a preliminary objection in the nature of a demurrer, thus,

> All material facts set forth in the Complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether on the facts averred the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. (Citations and brackets omitted).

*Kyle v. McNamara & Criste*, 506 Pa. 631, 634, 487 A.2d 814, 816 (1985). It is within the confines of this standard that we consider this matter.

at 11:00 that morning. During the therapy session, Joseph told Mr. Scuderi that his irritation with Ms. Hausler was becoming worse because that day she was returning to their apartment to get her clothing, that he was under great stress, and that he was going to kill her if he found her removing her clothing from their residence.

Mr. Scuderi recommended that Joseph voluntarily commit himself to a psychiatric hospital. Joseph refused; however, he stated that he was in control and would not hurt Ms. Hausler. At 12:00 p.m., the therapy session ended, and, as stated in the complaint, Joseph was permitted to leave the Center "based solely upon his assurances that he would not harm" Ms. Hausler.

At 12:15 p.m., Mr. Scuderi received a telephone call from Ms. Hausler informing him that she was in Philadelphia en route to retrieve her clothing from their apartment, located at 6924 Large Street. Ms. Hausler inquired as to Joseph's whereabouts. Mr. Scuderi instructed Ms. Hausler not to go to the apartment and to return to Reading.

In what ultimately became a fatal decision, Ms. Hausler ignored Mr. Scuderi's instructions and went to the residence where she was fatally shot by Joseph at or about 12:30 p.m. Five minutes later, Joseph telephoned Mr. Scuderi who in turn called the police at the instruction of Director Friedrich.[2]

Joseph was subsequently arrested and convicted of the murder of Ms. Hausler. Based upon these facts, Appellant filed two wrongful death and survival actions, alleging, *inter*

---

2. Specifically, Appellant's Second Amended Civil Action Complaint alleges in relevant part:

22. At 12:00 P.M., the therapy session ended, and Gad Joseph was permitted to leave the defendant PCHD's facility based solely upon his assurances that he would not harm Teresa M. Hausler.

23. At 12:15 P.M., Teresa M. Hausler telephoned Scuderia [sic], informing him that she was in Philadelphia, en route to pick-up her clothing from 6924 Large Street, and inquiring as to the whereabouts of Gad Joseph; she was told not to go there but to return to Reading.

24. Teresa M. Hausler nevertheless went to 6924 Large Street to collect her clothing, and at or about 12:30 P.M., Gad Joseph arrived there as well, and he shot her six times in the head and abdomen, causing her to suffer fatal bodily injuries.

*alia*, that Appellees negligently failed to properly warn Ms. Hausler, and others including her family, friends and the police, that Joseph presented a clear and present danger of harm to her.

The trial court granted judgment on the pleadings in favor of Appellees finding, *inter alia*, that the duty of a mental health professional to warn a third party had not yet been adopted in Pennsylvania, but that even if such a legal duty existed, Mr. Scuderi's personal warning discharged that duty. The Superior Court affirmed, reiterating that mental health care providers currently have no duty to warn a third party of a patient's violent propensities, and that even if such a duty existed, Appellant failed to establish a cause of action as his decedent was killed when she ignored Mr. Scuderi's warning not to go to Joseph's apartment.

Initially, we must determine if in this Commonwealth, a mental health care professional owes a duty to warn a third party of a patient's threat of harm to that third party, and if so, the scope of such a duty. While this precise issue is one of first impression for this court, it is an issue which has been considered by a number of state and federal courts and has been the subject of much commentary.[3] Supported by the wisdom of decisions from other jurisdictions, as well as by analogous decisions by this court and lower court case law in this Commonwealth, we determine that a mental health care professional, under certain limited circumstances, owes a duty to warn a third party of threats of harm against that third party. Nevertheless, we find that in this case, judgment on the pleadings was proper, and thus, we affirm the decision of the learned Superior Court, albeit, for different reasons.

█ Under common law, as a general rule, there is no duty to control the conduct of a third party to protect another from harm. However, a judicial exception to the general rule has

---

**3.** One commentator has noted that the issue has generated a "national debate and engendered what has been generally recognized as a virtual cottage industry of analysis." *The Duty of Mental Health Care Providers to Restrain Their Patients or Warn Third Parties,* 60 Mo. L.Rev. 749 (1995).

been recognized where a defendant stands in some special relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct, which gives to the intended victim a right to protection. *See*, Restatement (Second) of Torts §315 (1965). Appellant argues that this exception, and thus, a duty, should be recognized in Pennsylvania.

Our analysis must begin with the California Supreme Court's landmark decision in *Tarasoff v. Regents of Univ. of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976) which was the first case to find that a mental health professional may have a duty to protect others from possible harm by their patients. In *Tarasoff*, a lawsuit was filed against, among others, psychotherapists employed by the Regents of the University of California to recover for the death of the plaintiffs' daughter, Tatiana Tarasoff, who was killed by a psychiatric outpatient.

Two months prior to the killing, the patient had expressly informed his therapist that he was going to kill an unnamed girl (who was readily identifiable as the plaintiffs' daughter) when she returned home from spending the summer in Brazil. The therapist, with the concurrence of two colleagues, decided to commit the patient for observation. The campus police detained the patient at the oral and written request of the therapist, but released him after satisfying themselves that he was rational and exacting his promise to stay away from Ms. Tarasoff. The therapist's superior directed that no further action be taken to confine or otherwise restrain the patient. No one warned either Ms. Tarasoff or her parents of the patient's dangerousness.

After the patient murdered Ms. Tarasoff, her parents filed suit alleging, among other things, that the therapists involved had failed either to warn them of the threat to their daughter or to confine the patient.

The California Supreme Court, while recognizing the general rule that a person owes no duty to control the conduct of another, determined that there is an exception to this general

rule where the defendant stands in a special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct, citing Restatement (Second) of Torts §315–320. Applying that exception, the court found that the special relationship between the defendant therapists and the patient could support affirmative duties for the benefit of third persons. *Tarasoff* 17 Cal.3d at 436, 131 Cal.Rptr. at 23, 551 P.2d at 343.[4]

The court made an analogy to cases which have imposed a duty upon physicians to diagnose and warn about a patient's contagious disease and concluded that " 'by entering into a doctor-patient relationship the therapist becomes sufficiently involved to assume some responsibility for the safety, not only of the patient himself, but also of any third person whom the doctor knows to be threatened by the patient.' " *Id.*, 17 Cal.3d at 437, 131 Cal.Rptr. at 24, 551 P.2d at 344, quoting Fleming & Maximov, *The Patient and His Victim: The Therapist's Dilemma*, 62 Cal. L.Rev. 1025, 1030 (1974).

The court also considered various public policy interests determining that the public interest in safety from violent assault outweighed countervailing interests of the confidentiality of patient therapist communications and the difficulty in predicting dangerousness. *Id.*, 17 Cal.3d at 437–43, 131 Cal. Rptr. at 24–28, 551 P.2d at 344–48.

■ The California Supreme Court ultimately held:

4. The court relied solely upon section 315 for its determination that a duty to protect should be imposed when the nature of the relationship deserves recognition as a special relationship. However, comment c to §315 states that special relationships between the actor and one whom the Restatement refers to as a "third person" requiring the actor to control "the third person's" conduct are described in §§316–19.

Although not specifically addressed by the court in *Tarasoff*, section 319, entitled "Duty to Those in Charge of Person Having Dangerous Propensities," notes a duty to control a third person who the actor knows or should know is likely to cause bodily harm to others if not controlled. "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Restatement (Second) of Torts §319. Other courts which have adopted a *Tarasoff* type duty have analyzed the issue under either section 315 or 319.

When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger.

17 Cal.3d at 431, 131 Cal.Rptr. at 20, 551 P.2d at 340.[5]

Following *Tarasoff,* the vast majority of courts that have considered the issue have concluded that the relationship between a mental health care professional and his patient constitutes a special relationship which imposes upon the professional an affirmative duty to protect a third party against harm. Thus, the concept of a duty to protect by warning, albeit limited in certain circumstances, has met with virtually universal approval. *See e.g., Naidu v. Laird,* 539 A.2d 1064 (Del.1988); *Bardoni v. Kim,* 151 Mich.App. 169, 390 N.W.2d 218 (1986); *Bradley v. Ray,* 904 S.W.2d 302 (Mo.Ct. App.1995); *Lipari v. Sears, Roebuck & Co.,* 497 F.Supp. 185 (D.Neb.1980); *McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500 (1979); *Leedy v. Hartnett,* 510 F.Supp. 1125 (M.D.Pa.1981); *Peck v. Counseling Service of Addison Co., Inc.,* 146 Vt. 61, 499 A.2d 422 (Vt.1985); *Petersen v. Washington,* 100 Wash.2d 421, 671 P.2d 230 (1983); *Schuster v. Altenberg,* 144 Wis.2d 223, 424 N.W.2d 159 (1988). *Accord, Hamman v. County of Maricopa,* 161 Ariz. 58, 775 P.2d 1122 (1989); *Bradley Center, Inc. v. Wessner,* 161 Ga.App. 576, 287 S.E.2d 716, *aff'd,* 250 Ga. 199, 296 S.E.2d 693 (1982); *Perreira*

---

**5.** It is critical to note that the *Tarasoff* court found a duty to *protect* a third party from a patient. We believe, and the court in *Tarasoff* made clear, that a duty to warn is subsumed in this broader concept of a duty to protect. Indeed, a warning was one alternative offered by the court in *Tarasoff* to discharge the duty to protect. "The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus, it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances." *Tarasoff,* 17 Cal.3d at 431, 131 Cal.Rptr. at 20, 551 P.2d at 340.

However, consistent with our limited grant, we will only address the issue of protection in the context of a duty to warn the intended victim of danger. We leave for another day the related issue of whether some broader duty to protect should be recognized in this Commonwealth.

*v. State,* 768 P.2d 1198 (Colo.1989); *Littleton v. Good Samaritan Hospital and Health Center,* 39 Ohio St.3d 86, 529 N.E.2d 449 (1988); *Limon v. Gonzaba,* 940 S.W.2d 236 (Tex.App.— San Antonio 1997). *But see, Boynton v. Burglass,* 590 So.2d 446 (Fla.Dist.Ct.App.1991).

■ We believe that the *Tarasoff* decision and its progeny are consistent with, and supported by, Pennsylvania case law and properly recognize that pursuant to the special relationship between a mental health professional and his patient, the mental health professional has a duty to warn a third party of potential harm by his patient.

This court has not previously had the occasion to address whether a mental health professional has a common law duty to warn a third party of a patient's threat of harm. However, decisions by this court in analogous situations, certain lower court decisions dealing with this issue, and public policy support the recognition of a duty to warn.

The finding of a duty to protect by warning another of future harm by a patient is consistent with this court's prior case law regarding liability of a mental health professional to a third party for the negligent discharge of a patient under the Mental Health Procedures Act ("MHPA").[6] In *Goryeb v. Commonwealth of Pennsylvania, Department of Public Welfare,* 525 Pa. 70, 78, 575 A.2d 545, 549 (1990), this court recognized that liability may attach for committing willful misconduct or gross negligence in discharging a patient under the MHPA. The court found that a person committing willful misconduct or gross negligence would be liable for that decision or any of its consequences and that the duty was owed to those who could foreseeably be affected by a wrongful discharge of the patient.

The court cited with approval section 319 of Restatement (Second) of Torts and *Vattimo v. Lower Bucks Hospital,* 502 Pa. 241, 258, 465 A.2d 1231, 1240 (1983)(concurring and dissenting opinion by then Justice, now former Chief Justice Nix)("Under well established precedent, if plaintiff produces

**6.** 50 P.S. §7101 et seq.

sufficient evidence to demonstrate the mental condition of [the patient] warranted the duty asserted, the hospital would clearly be responsible for injury to the person or property of third parties where such injury resulted from the hospital's negligent failure to meet its responsibility."). *Accord, Sherk v. County of Dauphin,* 531 Pa. 515, 520, 614 A.2d 226, 228–29 (1992).[7] Thus, under the MHPA, this court has recognized liability for breach of a duty to a third party regarding potential harm to that third party by a mental health patient.

Further supporting the concept of a duty to warn, this court has already recognized the existence of a cause of action against a physician favoring a third person in the context of contagious disease, and, thus, has recognized certain legal duties on the part of a physician to protect another from future harm by a patient.

In *DiMarco v. Lynch Homes–Chester County, Inc.,* 525 Pa. 558, 583 A.2d 422 (1990), this court held that a physician may be liable to a non-patient third person who is injured because of his negligent treatment of a patient. In that case, a physician misinformed his patient, a blood technician who had been accidentally exposed to the communicable disease, hepatitis B, that if she remained symptom-free for six weeks she was not infected with the disease. While the patient was told to refrain from sexual relations for six weeks, she abstained from sex with her boyfriend for eight weeks. After eight weeks, when she was still symptom-free, the patient engaged in sexual relations. Both she and her partner were later diagnosed with hepatitis B. The patient's boyfriend brought an action against, inter alia, the patient's doctors alleging their

7. We note that the MHPA applies to "all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and [to] all voluntary inpatient treatment of mentally ill persons." 50 P.S. §7103. Here it is unclear whether Joseph was being treated as an involuntary outpatient or a voluntary outpatient. However, given our decision today, Joseph's status is not critical for our resolution of this matter. We merely note that if Joseph was an involuntary outpatient, and, therefore, the MHPA would be applicable, Appellant may have the additional hurdle of the MHPA's immunity provision which permits liability only for willful misconduct or gross negligence. 50 P.S. §7114; *Albright v. Abington Memorial Hospital,* 548 Pa. 268, 696 A.2d 1159 (1997).

negligence in not having warned the patient that having sexual relations within six months of exposure to hepatitis B could expose her sexual partner to the disease.

This court extended the physician's duty to encompass third parties whose health could be threatened by contact with the diseased patient.

Such precautions are taken not to protect the health of the patient, whose well-being has already been compromised, rather such precautions are taken to safeguard the health of others. Thus, the duty of a physician in such circumstances extends to those "within the foreseeable orbit of risk of harm" (citation omitted).

*DiMarco*, 525 Pa. at 562, 583 A.2d at 424.

This court went on to state:

If a third person is in that class of persons whose health is likely to be threatened by the patient, and if erroneous advice is given to that patient to the ultimate detriment of the third person, the third person has a cause of action against the physician, because the physician should recognize that the services rendered to the patient are necessary for the protection of the third person.

*Id.* at 563, 583 A.2d at 424–25.

Thus, this court found that the non-patient third party had stated a cause of action against the patient's physician for the breach of a duty owed to him. *Accord, Troxel v. A.I. Dupont Institute, Ches–Penn Health Services, Inc.,* 450 Pa.Super. 71, 675 A.2d 314 (1996), *allocatur denied,* 546 Pa. 668, 685 A.2d 547 (1996).

Having found that a physician owes a duty to a non-patient third party, at least in the context of a contagious disease, we believe that there is no reason why an analogous duty to warn should not be recognized when the disease of the patient is a mental illness that may pose a potentially greater and more immediate risk of severe harm or death to others. *See, Peck,* 499 A.2d at 425.

The precise issue before us has been addressed by our lower courts on two previous occasions. In *Dunkle v. Food Service East, Inc.*, 400 Pa.Super. 58, 582 A.2d 1342 (1990), a patient was diagnosed as having schizophreniform disorder and was taking medication to treat the disorder. The patient's treating psychiatrist eventually discontinued the medication and discharged the patient. Several months later, the patient strangled his live-in girlfriend to death. The Superior Court was faced with the similar issue of whether the doctors and hospital owed a duty to the plaintiff's decedent. The Superior Court held, while acknowledging the validity of a *Tarasoff* type duty, "that a psychologist (or psychiatrist) owes no duty to warn or otherwise protect a non-patient where the patient has not threatened to inflict harm on a particular individual." *Dunkle*, 400 Pa.Super. at 68, 582 A.2d at 1347. Thus, the court declined to recognize a duty to protect a "non-identifiable (in advance of her death) and arguably non-foreseeable third party victim." *Dunkle*, 400 Pa.Super. at 64, 582 A.2d at 1345.

Three years later in *Leonard v. Latrobe Area Hospital*, 425 Pa.Super. 540, 625 A.2d 1228 (1993), the Superior Court reaffirmed its holding in *Dunkle*, and determined that the specific identity of an intended victim must be brought to a doctor's attention before a duty to warn arises. Thus, the lower courts in this Commonwealth which have addressed this issue have at least implicitly recognized, in some limited circumstances, the validity of a duty to warn.

Finally, sound principles of public policy support a duty to warn. It has been stated by this court that "[i]n determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than 'the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection' from the harm suffered." *Mazzagatti v. Everingham By Everingham*, 512 Pa. 266, 278, 516 A.2d 672, 678 (1986)(quoting *Sinn v. Burd* 486 Pa. 146, 164, 404 A.2d 672, 681 (1979)). Thus, recognition of a duty is in essence one of policy considerations.

It is axiomatic that important policy considerations exist regarding the public's interest in safety from immediate and serious, if not deadly, harm. Countervailing policies regarding the treatment of mental health patients, specifically recognition of the difficulty in predicting violent behavior, the importance of confidential communications between therapist and patient, and the policy that patients be placed in the least restrictive environment must be acknowledged. We believe, however, that the societal interests in the protection of this Commonwealth's citizens from harm mandates the finding of a duty to warn. Simply stated, it is reasonable to impose a duty on a mental health professional to warn a third party of an immediate, known and serious risk of potentially lethal harm. This is especially so considering the very circumscribed instances in which we find such a duty to warn arises, which are more fully discussed below.

Perhaps as best stated in *Tarasoff*:

Our current crowded and computerized society compels the interdependence of its members. In this risk-infested society we can hardly tolerate the further exposure to danger that would result from a concealed knowledge of the therapist that his patient was lethal. If the exercise of reasonable care to protect the threatened victim requires the therapist to warn the endangered party or those who can reasonably be expected to notify him, we see no sufficient societal interest that would protect and justify concealment. The containment of such a risk lies in the public interest.

*Tarasoff,* 17 Cal.3d at 442, 131 Cal.Rptr. at 27–28, 551 P.2d at 347–48.

After consideration of the above, we find that the special relationship between a mental health professional and his patient may, in certain circumstances, give rise to an affirmative duty to warn for the benefit of an intended victim. We find, in accord with *Tarasoff,* that a mental health professional who determines, or under the standards of the mental health profession, should have determined, that his patient presents a serious danger of violence to another, bears a duty to exercise

reasonable care to protect by warning the intended victim against such danger.[8]

Mindful that the treatment of mental illness is not an exact science, we emphasize that we hold a mental health professional only to the standard of care of his profession, which takes into account the uncertainty of such treatment. Thus, we will not require a mental health professional to be liable for a patient's violent behavior because he fails to predict such behavior accurately.

■ Moreover, recognizing the importance of the therapist-patient relationship, the warning to the intended victim should be the least expansive based upon the circumstances.

As stated by the court in *Tarasoff*,

We realize that the open and confidential character of psychotherapeutic dialogue encourages patients to express threats of violence, few of which are ever executed. Certainly a therapist should not be encouraged routinely to reveal such threats; such disclosures could seriously disrupt the patient's relationship with his therapist and with the person threatened. To the contrary, the therapist's obligations to his patient require that he not disclose a confidence unless such disclosure is necessary to avert danger to others, and even then that he do so discreetly, and in a fashion that would preserve the privacy of his patient to the fullest extent compatible with the prevention of the threatened danger.

*Tarasoff*, 17 Cal.3d at 441, 131 Cal.Rptr. at 27, 551 P.2d at 347.

Having determined that a mental health professional has a duty to protect by warning a third party of potential harm, we must further consider under what circumstances such a duty arises. We are extremely sensitive to the conundrum a

8. Again, because of the facts before us, and in light of our limited grant, we are not required to address the related issue of whether this duty to warn may be discharged by notifying relatives of the victim, other individuals close to the victim, or the police. Also, we do not address the similar issue of whether a broader duty to protect exists, other than in the context of a duty to warn, and what actions would discharge any such duty if it did exist.

mental health care professional faces regarding the competing concerns of productive therapy, confidentiality and other aspects of the patient's well being, as well as an interest in public safety. In light of these valid concerns and the fact that the duty being recognized is an exception to the general rule that there is no duty to warn those endangered by another, we find that the circumstances in which a duty to warn a third party arises are extremely limited.

First, the predicate for a duty to warn is the existence of a specific and immediate threat of serious bodily injury that has been communicated to the professional. We believe that in light of the relationship between a mental health professional and patient, a relationship in which often vague and imprecise threats are made by an agitated patient as a routine part of the relationship, that only in those situations in which a specific and immediate threat is communicated can a duty to warn be recognized.

Moreover, the duty to warn will only arise where the threat is made against a specifically identified or readily identifiable victim. Strong reasons support the determination that the duty to warn must have some limits. We are cognizant of the fact that the nature of therapy encourages patients to profess threats of violence, few of which are acted upon. Public disclosure of every generalized threat would vitiate the therapist's efforts to build a trusting relationship necessary for progress. *Tarasoff; Thompson v. County of Alameda*, 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980)(limiting *Tarasoff* to specifically foreseeable and identifiable victims). Moreover, as a practical matter, a mental health care professional would have great difficulty in warning the public at large of a threat against an unidentified person. Even if possible, warnings to the general public would "produce a cacophony of warnings that by reason of their sheer volume would add little to the effective protection of the public." *Thompson*, 27 Cal.3d at 754–55, 167 Cal.Rptr. at 81, 614 P.2d at 735.

This limitation, in the mental health arena, is consistent with treatment of this consideration by the Pennsylvania

decisions in *Dunkle* and *Leonard* and a number of other courts. *See e.g., Brady v. Hopper,* 570 F.Supp. 1333 (D.Colo. 1983), *aff'd* 751 F.2d 329 (10th Cir.1984); *Fraser v. United States,* 236 Conn. 625, 674 A.2d 811 (1996); *Davis v. Yong–Oh Lhim,* 124 Mich.App. 291, 335 N.W.2d 481 (1983); *Cairl v. Minnesota,* 323 N.W.2d 20 (Minn.1982); *Leedy v. Hartnett,* 510 F.Supp. 1125 (M.D.Pa.1981). However, a few courts have held the duty is owed to all foreseeable victims. *Hamman v. County of Maricopa,* 161 Ariz. 58, 775 P.2d 1122 (1989); *Lipari v. Sears, Roebuck & Co.,* 497 F.Supp. 185 (D.Neb.1980); *McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500 (1979); *Petersen v. Washington,* 100 Wash.2d 421, 671 P.2d 230 (1983); *Schuster v. Altenberg,* 144 Wis.2d 223, 424 N.W.2d 159 (1988).

Thus, drawing on the wisdom of prior analysis, and common sense, we believe that a duty to warn arises only where a specific and immediate threat of serious bodily injury has been conveyed by the patient to the professional regarding a specifically identified or readily identifiable victim.

■ Appellees offer two primary arguments as to why this court should not recognize any duty to warn a third party of a patient's threats of harm. First, Appellees argue that a duty to warn should not be imposed on a mental health professional because such a professional is no better able than anyone else to predict violent behavior. Appellees offer various studies in support of its argument that purport to prove that dangerousness cannot be predicted.

While this court is cognizant of the difficulties predicting whether a patient may truly pose a danger to others, this argument rings hollow for a number of reasons. First, as noted above, the legislature has determined, and this court has already found, that liability may attach for negligently discharging a dangerous patient. *Goryeb.* Subsumed in finding such liability is a failure to recognize that the patient was dangerous.

Related thereto, determinations of "dangerousness" consistent with the MHPA must be undertaken by mental health professionals every day to involuntarily commit a patient.

Specifically, the MHPA in its procedures for involuntary mental health treatment mandates a determination of whether an individual poses a clear and present danger of harm to others or to himself. 50 P.S. §7301. Obviously, some understanding and prediction of dangerousness is required in making this determination. To find that a determination of dangerousness is so uncertain to be no better than a coin toss, and thus, preclude liability, would raise "serious questions ... as to the entire present basis for commitment procedures." *McIntosh*, 168 N.J.Super. at 495, 403 A.2d at 514.

Moreover, we are unpersuaded that difficulty in predicting violent conduct alone should justify barring recovery in all situations. The standard of care for mental health professionals adequately takes into account the difficult nature of the problem facing them. *Tarasoff*, 17 Cal.3d at 436–37, 551 P.2d at 344–45, 131 Cal.Rptr. at 24–25; *Lipari*, 497 F.Supp. 185, 192 (D.Neb.1980); *McIntosh*, 168 N.J.Super. at 481–82, 403 A.2d at 507–08; *Peck*, 146 Vt. 61, 499 A.2d 422, 425 (Vt.1985).

Finally, while there may not be one hundred percent accuracy in predictions of dangerousness, a therapist "does have a basis for giving an opinion and a prognosis based on the history of the patient and the course of treatment." *McIntosh*, 168 N.J.Super. at 482, 403 A.2d at 508. We take note that mental health professionals are trained to detect, identify, evaluate and deal with threats and violent behavior, thus, setting themselves apart from others who are faced with the knowledge of threats of violence against a third party.

Thus, we reject Appellees' argument that a duty to warn should not be recognized because of some difficulty in determining violent behavior.

Appellees also argue that the strong policies underlying the protection of the therapist-patient privilege prohibit disclosure of confidential information, and, thus, preclude the finding of a duty to warn. This court is aware of the critical role that confidentiality plays in the relationship between therapist and patient, constituting, as one author has described, the "*sine qua non* of successful psychiatric treatment." *Commonwealth*

*ex rel. Platt v. Platt,* 266 Pa.Super. 276, 304, 404 A.2d 410, 425 (1979)(concurring and dissenting opinion by Judge Spaeth). ·Nevertheless, we believe that the protection against disclosure of confidential information gained in the therapist-patient relationship does not bar the finding of a duty to warn.

■ This Commonwealth's statute regarding the psychiatrist or psychologist-patient privilege does not explicitly recognize an exception where immediate harm to a member of the public is involved.[9]

However, and simply stated, regulations promulgated by the State Board of Psychology, which include, inter alia, a majority of members with license to practice psychology, recognize an exception in the case of a serious threat of harm to an identified or readily identifiable person. The relevant regulations, promulgated under the code of ethics, are entirely consistent with our opinion today. Set forth *in toto:*

A psychologist may reveal the following information about a client:

(1) Information received in confidence is revealed only after most careful deliberation and when there is a clear and imminent danger to an individual or to society, and then only to appropriate professional workers or public authorities. This Code of Ethics does not prohibit a psychologist from taking reasonable measures to prevent harm when a client has expressed a serious threat or intent to kill or seriously injure an identified or readily identifiable person or group of people and when the psychologist determines that the client is likely to carry out the threat or intent. Reasonable measures may include directly advising the potential victim of the threat or intent of the client. Be-

**9.** No psychiatrist or person who has been licensed under the Act of March 23, 1972 (P.L.136, No.52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. §5944.

cause these measures should not be taken without careful consideration of clients and their situation, consultation with other mental health professionals should be sought whenever there is time to do so to validate the clinical impression that the threat or intent of harm is likely to be carried out.

49 Pa.Code §41.61.[10]

Thus, a duty to warn would not require a mental health professional to violate therapist-patient confidentiality. Rather, the therapist-patient privilege, as interpreted by the State Board of Psychology, embraces the concept. Therefore, the privilege clearly does not prohibit a duty to warn.

■ Likewise, while under the MHPA limited exceptions exist regarding the disclosure of privileged communications, none addresses a threat of serious harm to a third party.[11]

Again however, the MHPA's implementing regulations provide for nonconsensual release of confidential records "[i]n response to an emergency medical situation when release of information is necessary to prevent serious risk of bodily

**10.** Similarly, the law regarding the confidentiality of information between an attorney and his client, referred to in the statute, permits the disclosure of confidential information without consent in the situation of a likelihood of death or substantial bodily harm. "A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary ... to prevent the client from committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm or substantial injury to the financial interests or property of another." Pennsylvania Rule of Professional Conduct 1.6(c)(1).

**11.** Section 111 of the MHPA provides in relevant part:
All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
(1) those engaged in providing treatment for the person;
(2) the county administrator, pursuant to section 110;
(3) a court in the course of legal proceedings authorized by this act; and
(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.
In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent.
. . .
50 P.S. §7111.

injury or death." 55 Pa.Code §5100.32(a)(9). While somewhat vague, these regulations have been interpreted to apply to threats of bodily injury or death to a third party. *Ms. B. v. Montgomery County Emergency Service, Inc.*, 799 F.Supp. 534 (E.D.Pa.1992), *aff'd* 989 F.2d 488 (3d Cir.1993).

Indeed, the existence of a duty to warn is in accord with the limits on patient-therapist confidentiality recognized by the American Psychiatric Association and the American Medical Association. "When in the clinical judgment of the treating psychiatrist the risk of danger is deemed to be significant, the psychiatrist may reveal confidential information disclosed by the patient." *American Psychiatric Association, The Principles of Medical Ethics With Annotations Especially Applicable to Psychiatry*, (1995 ed.). "The obligation to safeguard patient confidences is subject to certain exceptions which are ethically and legally justified because of overriding social considerations. Where a patient threatens to inflict serious bodily harm to another person or to himself or herself and there is a reasonable probability that the patient may carry out the threat, the physician should take reasonable precautions for the protection of the intended victim, including notification of law enforcement authorities." *American Medical Association Principles of Medical Ethics* P 5.05, reprinted in Council on Ethical and Judicial Affairs of the American Medical Association, Code of Medical Ethics, Current Opinions with Annotations, at p. 72 (1994).

Based upon the above, it is clear that the law regarding privileged communications between patient and mental health care professional is not violated by, and does not prohibit, a finding of a duty on the part of a mental health professional to warn an intended victim of a patient's threats of serious bodily harm. As succinctly stated by the court in *Tarasoff*, "The protective privilege ends where the public peril begins." *Tarasoff*, 17 Cal.3d at 441, 131 Cal.Rptr. at 27, 551 P.2d at 347.

In summary, we find that in Pennsylvania, based upon the special relationship between a mental health professional and his patient, when the patient has communicated to the professional a specific and immediate threat of serious bodily injury

against a specifically identified or readily identifiable third party and when the professional, determines, or should determine under the standards of the mental health profession, that his patient presents a serious danger of violence to the third party, then the professional bears a duty to exercise reasonable care to protect by warning the third party against such danger.

▄▄▄ Finally we must decide whether judgment on the pleadings was proper in this case. Viewing the facts as averred in the complaint, with all reasonable inferences therefrom, it is clear that Joseph was a patient of Appellees and was being treated by Appellees for mental illness. Further, Joseph had a definite, established, long term and ongoing relationship with the Center, and with Mr. Scuderi in particular. Thus, sufficient facts were pled to support the existence of a special relationship between Appellees and Joseph, while Joseph was being treated as an outpatient, which is necessary for the finding of a duty to warn.[12] *Accord, Tarasoff; McIntosh; Peck;* Restatement (Second) of Torts §§ 315, 319.[13]

▄▄▄ Moreover, the complaint alleges that in the course of his treatment, Joseph stated to Mr. Scuderi that if Ms.

12. Appellant offers that Appellees provided care to Ms. Hausler as well as Joseph; however, he fails to explain the significance of his assertion. Because the facts as to Ms. Hausler's treatment by Appellees are not clearly set forth by Appellant and because we find that a special relationship existed between Appellees and Joseph which gave rise to a duty to warn, we do not address the issue of whether there existed a special relationship between Appellees and Ms. Hausler which would also serve as the foundation for a duty to warn.

13. We are cognizant that some courts have found that mental health professionals lack sufficient control over outpatients to give rise to this special relationship. *See e.g., Nasser v. Parker,* 249 Va. 172, 455 S.E.2d 502 (1995); *Boynton v. Burglass,* 590 So.2d 446 (Fla.App.1991); *Hasenei v. United States,* 541 F.Supp. 999 (D.Md.1982). While a mental health professional may have less of an ability to "take charge" of a patient in an outpatient setting, this lesser degree of supervision does not justify a wholesale rejection of a duty to warn. The facts as pleaded in this case support the finding of a special relationship which serves as a foundation for the existence of a duty to warn. Restatement (Second) of Torts §§ 315, 319. Again, as we only address a duty to warn, we do not address the issue of whether the mental health professional/outpatient relationship would translate into a relationship which would support a broader duty to protect or commit to inpatient treatment.

Hausler came to his apartment that day, he was going to kill her. Thus, Joseph communicated a specific and immediate threat of serious bodily harm against a specifically identified victim.[14] The complaint alleges that Mr. Scuderi knew or should have known that Joseph was a clear and present danger of harm to Ms. Hausler. Consistent with the decision rendered by the court today, and specifically, consistent with the limitations regarding when a duty to warn arises, the facts as stated in the complaint are sufficient to support a finding of the existence of a duty to warn.

Having determined that the facts set forth in the complaint are sufficient to support a finding of the existence of a duty to warn, we turn to consider whether the instructions given by Mr. Scuderi to Ms. Hausler discharged any such duty. Both lower courts in this matter found, and Appellees argue, that Mr. Scuderi discharged any duty to warn as a matter of law.

While the existence of a duty is a question of law, whether there has been a neglect of such duty is generally for the jury. However, the issue of whether an act or a failure to act constitutes negligence may be removed from consideration by a jury and decided as a matter of law when the case is free from doubt and there is no possibility that a reasonable jury could find negligence. *See Beck v. Stanley Co. of America,* 355 Pa. 608, 50 A.2d 306 (1947); *Bloom v. DuBois Regional Medical Center,* 409 Pa.Super. 83, 597 A.2d 671 (1991); *Johnson by Johnson v. Walker,* 376 Pa.Super. 302, 545 A.2d 947 (1988).

Our determination as to whether Appellees breached any duty as a matter of law is really an inquiry as to whether

14. Even though Appellant has pled in his complaint that Joseph was permitted to leave the Center based solely upon his assurances that he would not harm Ms. Hausler, we do not believe that this fact would defeat his assertion of a duty to warn as a matter of law. The recantation of a threat would certainly be relevant to the issue of whether the mental health professional knew or should have known, pursuant to the standards of his profession, that the patient presented a serious danger of violence to a third party. However, we cannot say, in light of the standard for judgment on the pleadings, that an assurance that the patient would not harm a third party, as a matter of law, precludes the finding of a duty to warn.

the instruction given by Mr. Scuderi was adequate to discharge a duty to warn. A mental health care professional's warning must be reasonable under the particular circumstances. *See Tarasoff,* 17 Cal.3d at 439, 131 Cal.Rptr. at 25, 551 P.2d at 345. This consideration of the reasonableness of the warning under the circumstances is eminently sound as different warnings, depending upon the attendant circumstances in each case, may be given to maintain patient confidentiality, and, at the same time, to prevent serious bodily harm.

Here, the facts as alleged in the complaint disclose that Joseph had physically and verbally abused Ms. Hausler in the past and had often threatened to murder her. Thus, Ms. Hausler knew of Joseph's history of violent propensities. It was Ms. Hausler who telephoned Mr. Scuderi on the date in question. She informed Mr. Scuderi that she was en route to pick up her clothing at their apartment and inquired as to the whereabouts of Joseph. A reasonable inference from her telephone call and inquiry as to the whereabouts of Joseph is that Ms. Hausler was concerned for her safety. Mr. Scuderi informed Ms. Hausler not to go to Joseph's residence and instructed her to return to her lodgment in Reading.

After consideration of the facts as pled regarding the circumstances surrounding the events of June 27, 1991, and after consideration of Mr. Scuderi's specific instructions designed to prevent the threatened harm, including the reasonable inferences that Ms. Hausler knew of Joseph's violent propensities and that she telephoned Mr. Scuderi in concern for her safety, we find that Mr. Scuderi's warning was reasonable as a matter of law. The warning was discreet and in accord with preserving the privacy of his patient to the maximum extent possible consistent with preventing the threatened harm to Ms. Hausler. Thus, Mr. Scuderi discharged any duty to warn.[15]

15. In his brief, Appellant makes the vague assertion that because of Ms. Hausler's mental illness she was somehow limited in her ability to comprehend Mr. Scuderi's instructions. However, Appellant fails to set forth in his complaint the required material facts regarding the nature or extent of Ms. Hausler's alleged illness or any facts which support the

While this matter evokes great sympathy, we agree with the lower courts that after examining the complaint in this case, it is clear that on the facts averred, as a matter of law, recovery by Appellant is not possible. Thus, judgment on the pleadings was proper.

For the foregoing reasons, we affirm the judgment of the Superior Court.

Chief Justice FLAHERTY files a concurring opinion.

Justice ZAPPALA files a concurring opinion in which Justice CASTILLE joins.

Justices NIGRO and NEWMAN file concurring and dissenting opinions.

FLAHERTY, Chief Justice, concurring.

Mr. Justice Cappy, on behalf of the court, has authored an excellent opinion, and I join it. I write to express my concern that this is yet another extension of liability in an already too litigious society. Here, in my view, the extension is justified by the circumstances presented, but I would go no further. Yes, one can reason in so many instances that an extension of liability is merely a small step flowing naturally and logically from the existing case law. Yet each seemingly small step, over time, leads to an ever proliferating number of small steps that add up to huge leaps in terms of extensions of liability. At some point it must stop and I would draw the line in this area of the law with what is expressed by the court in this case—no further.

ZAPPALA, Justice, concurring.

I agree that judgment on the pleadings in favor of these defendants was appropriate, and thus I concur in the result. However, I do not agree that we should impose a legal duty on

belief that Ms. Hausler lacked the capacity to appreciate the warning given by Mr. Scuderi. Pa.R.C.P. 1019(a). Thus, it is only appropriate for this court to determine the propriety of judgment on the pleadings on the basis of the facts actually pleaded in Appellant's complaint.

mental health care professionals to warn a third party of a patient's threat of harm.

At the outset, I would suggest that the Opinion of the Court, notwithstanding its scholarly survey of cases from our own courts and other jurisdictions, might well be viewed as an extensive exercise in *obiter dictum*. Contrary to the assertion that "we must determine" this issue, Slip Opinion at 6, the ultimate resolution indicates that we need not decide the issue at all in order to resolve this case. The result is the same whether we recognize a duty or not; thus this case is simply a vehicle for expounding on what the law should be without necessity of referring to the facts at hand.

Even if it were necessary to decide the issue of a mental health professional's duty to warn a third party of threats by a patient in order to resolve this case, I would not join in recognizing such a duty. I disagree with the assertion that doing so is analogous to or consistent with cases such as *DiMarco v. Lynch Homes–Chester County, Inc.*, 525 Pa. 558, 583 A.2d 422 (Pa.1990). There, physicians advised a patient who had been exposed to hepatitis that if she had shown no symptoms within six weeks, she had not contracted the disease. The patient refrained from sexual relations for eight weeks. Approximately one month later, she was diagnosed with hepatitis B and a few months later her sexual partner was similarly diagnosed. The partner sued the physicians, alleging that they were negligent in not advising the patient to refrain from having sexual relations for six months. Although our Court held that the physicians in that case could be subject to liability to persons other than their patient, the duty, properly speaking, remained a duty regarding their treatment of the patient, i.e., to exercise reasonable care in the giving of medical advice to the patient. Harm to the third party was determined to be "within the foreseeable orbit of risk" of giving the patient erroneous advice, and thus the physicians were subject to liability for that harm. We did not hold that the physicians had a duty directly to the third party, which would be the more precise analogy to the holding here.

Likewise, I do not agree that finding a duty to protect by warning is consistent with cases such as *Goryeb v. Commonwealth, Department of Public Welfare,* 525 Pa. 70, 575 A.2d 545 (Pa.1990). In that case, a person who had been subjected to involuntary commitment at a state hospital was discharged within 120 hours, as required by the Mental Health Procedures Act where no certification for extended involuntary emergency treatment has been filed with the common pleas court. See 50 P.S. §§ 7302 and 7303. A week after his release, he shot his former girlfriend, her boyfriend, and another man, seriously wounding the first two and killing the last. He then shot and killed himself. In an action against the hospital and one of the doctors brought by or on behalf of the victims, we held that those involved in the decision could be liable for harm to a third party resulting from a decision to discharge a mental patient which was made through willful misconduct or gross negligence. Again, the duty involved a treatment decision with respect to the patient and the foreseeable consequences if that decision were made with less than due care.[1] It did not involve a direct duty to act with respect to third parties, only a duty to treat the patient in such a way as not to subject third parties to harm.

Finally, I fail to see the logical connection between the "special relationship" the mental health professional has with the patient and the duty to warn. Although such a relationship might make it more likely that a mental health professional would become aware of threats of harm than would other citizens, mere knowledge of the threats does not seem to be the basis for the imposition of the duty. What of other "special relationships" within which a person might feel free enough to reveal an intention to do harm? And how can the duty be limited to mental health patients and mental health professionals? If threats are specific and immediate and the person to whom the threats are revealed knows or reasonably

1. I would also note that both the duty and the willful misconduct or gross negligence standard involved in *Goryeb,* represented a legislative judgment made law as part of the Mental Health Procedures Act, 50 P.S. § 7101 et seq. rather than an extension of the common law of negligence.

should know that there is a serious risk of harm, why would not the duty extend to them as well? To be sure, what would be considered reasonable for a mental health professional to know might differ from what would be considered reasonable for someone without specialized training to know, but a difference in what is reasonable for particular parties does not impact on the question of whether a duty should be recognized in the first instance.

The majority, in essence, imposes a legal duty on mental health professionals to use their specialized training to intercede for the benefit of third parties and subjects them to liability for failing to do so. This represents a great leap from our common law tradition that legal liability does not attach for a failure to render aid. I regret that the majority has seemingly overlooked the possible consequences before making that leap.

Justice CASTILLE joins this Concurring Opinion.

NIGRO, Justice, concurring and dissenting.

I join the majority's decision that a mental health care professional owes a duty to warn a third party of a patient's threat of harm based upon the professional's special relationship with his patient. I further join the scope of the duty to warn as set forth by the majority to the extent the duty arises when a patient communicates a specific and immediate threat of serious bodily injury against a specifically identified or readily identifiable third party or third parties, and the professional determines or should determine that the patient presents a serious danger of harm.

I dissent, however, from the majority's conclusion that judgment on the pleadings is proper in this case. In *Bensalem Township School Dist. v. Commonwealth*, 518 Pa. 581, 586–87, 544 A.2d 1318, 1321 (1988), the Court discussed the use of a motion for judgment on the pleadings under Pennsylvania Rule of Civil Procedure 1034:

A rule 1034 motion for judgment on the pleadings can be used as a motion to test whether such a cause of action as

pleaded exists at law, and in that way 'is in the nature of a demurrer.' *Bata v. Central Pennsylvania [Central-Penn] National Bank of Philadelphia,* 423 Pa. 373, 378, 224 A.2d 174, 178 (1966). 'It [the motion] is limited to the pleadings themselves and no factual material outside the pleadings may be considered.' Goodrich Amran [sic], 2d ? 1035:1, p. 423[sic]. The issue in such a case is not whether the facts support the action, but whether there is such an action under the law.

Appellant's complaint states a cause of action for negligence. As the majority recognizes, the complaint alleges facts establishing a special relationship between Appellees and their patient, Gad Joseph. Appellant further alleges that Joseph communicated to his therapist, Anthony Scuderi, a threat of serious bodily harm to Teresa Hausler. Appellant avers that Appellees were negligent in failing to properly explain to Hausler that Joseph presented a clear and present danger of harm to her. Appellant further avers that this omission was a proximate cause of Hausler's injuries. Since Appellant has pled a cause of action that exists at law, under *Bensalem Township,* judgment on the pleadings is improper.

The majority acknowledges that the complaint states a cause of action for negligence but concludes that Scuderi was not negligent as a matter of law. In deciding that Scuderi gave Hausler an adequate warning, the majority draws inferences from the complaint and improperly views them in a light unfavorable to Appellant. Under the correct standard, the pleadings and the inferences therefrom are viewed in the light most favorable to the party opposing the motion for judgment on the pleadings. *Karns v. Tony Vitale Fireworks Corp.,* 436 Pa. 181, 184, 259 A.2d 687, 688 (1969). All of the opposing party's well-pleaded allegations are viewed as true but only those facts specifically admitted by him may be considered against him. *Id.; Sejpal v. Corson, Mitchell, Tomhave & McKinley, M.D.'s,* 445 Pa.Super. 427, 430, 665 A.2d 1198, 1199 (1995).

Viewing the pleadings and reasonable inferences therefrom in the light most favorable to Appellant, Appellant alleges no

facts from which the Court can find that Hausler was warned of Joseph's immediate and specific threat of serious bodily harm. Appellant alleges only that Scuderi told Hausler not to go to the residence. Appellant does not allege that Scuderi explained why she should not go there or that Hausler understood that there was a risk of harm if she went.

The majority views Hausler's call to Scuderi in a light adverse to Appellant and infers that she called in concern for her safety. In fact, we have no idea why Hausler called Scuderi. If we view Hausler's call in a light favorable to Appellant as the law requires, we may infer that she simply preferred to pick up her belongings when Joseph was not home to avoid a confrontation. The majority further views Joseph's prior abuse of Hausler in a light adverse to Appellant and based upon an inference that Hausler was aware of Joseph's violent tendencies, seems to conclude that Hausler understood that going to the residence presented a risk of serious harm. Again, based upon the pleadings, we do not know whether Hausler perceived such a risk. If we view the complaint in a light favorable to Appellant as the law requires, we may infer from the allegation that Hausler is a mentally ill patient that she did not comprehend a risk of harm.

While these inferences may be proven or disproven as the case proceeds, having only the pleadings before us, the Court is unable to conclude that Scuderi's warning was adequate. Judgment on the pleadings is thus improper. *See Pilotti v. Mobil Oil Corp.*, 388 Pa.Super. 514, 565 A.2d 1227 (1989)(judgment on the pleadings is warranted only in cases where the moving party's right to relief is certain). Since Appellant's complaint states a claim for negligence and Appellees' right to relief is uncertain, the Court should remand this case to the trial court for further proceedings.

NEWMAN, Justice, concurring and dissenting.

I join in the majority's decision recognizing a duty mandatory for mental health care professionals to warn a third party of a patient's specific threat of immediate and serious bodily harm to that person. Additionally, I agree with the majority's

determination that such a duty arises when a patient communicates a serious, specific and immediate threat of bodily harm against an identified or identifiable third party.

I dissent, however, because I believe that the majority has incorrectly determined that, as a matter of law, the therapist, Anthony Scuderi, discharged his duty to warn Teresa Hausler of the danger posed to her by his patient with the vague admonition not to visit the apartment. Furthermore, I take exception to the qualification the majority places on the term "reasonable under the circumstances" when the majority states that the warning "should be the least expansive based upon the circumstances." In my view, the majority defers too greatly to the mental health care professional's interest in maintaining patient-psychotherapist confidentiality and, in this case, suggests too lenient a standard for discharging the duty to warn.

Having taken the step of establishing an affirmative duty on mental health care professionals to warn a third party of a specific threat by a patient of serious and immediate harm to that person, the majority stumbles by allowing that duty to be discharged, as a matter of law, by the very unspecific, imprecise statement of the therapist alleged here. "Reasonable under the circumstances" as the standard for discharge of the duty to warn must, of necessity, take into consideration the circumstances that give rise to the duty: the communication by the patient to the therapist of a specific and immediate threat of bodily harm to an identified or identifiable third person. To qualify this standard, as the majority does here, by sanctioning as "reasonable under the circumstances" a warning that is the "least expansive under the circumstances" fails to serve the purpose for creation of the duty in the first place: adequate notice to the person threatened.

We need not defer, as the majority does, to the professional's concern for his patient's privacy in determining whether a warning is sufficient as a matter of law to discharge the duty to warn. We have already found that the public concern for notice of dangerous behavior to the person imperiled outweighs the patient's privacy concerns when the therapist, in

his considered judgment based on the standards of the mental health care profession, concludes that the patient has communicated a specific and immediate threat to do serious bodily harm to an identified or identifiable individual, thus triggering his duty to warn that individual. Why, then, do we return to discounted privacy concerns when we permit a mental health care professional to discharge his duty to warn with a "warning" that does not describe the threat involved? The duty to warn established, the paramount concern no longer is the protection of the patient's privacy but the urgent need to provide the person threatened with the information necessary to take appropriate action. *See Tarasoff,* 17 Cal.3d at 442, 551 P.2d at 347, 131 Cal.Rptr. at 27 (public policy favoring protection of the confidential character of patient-psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others).

I cannot agree with the majority's determination that the "warning" alleged adequately discharged, as a matter of law, Mr. Scuderi's duty to warn Ms. Hausler of the serious danger posed by his patient. Accordingly, I would reverse the trial court's entry of judgment on the pleadings and remand for further proceedings.