688 A.2d 721

**Michael J. BRANDJORD and Susan Brandjord, H/W Appellants,**

v.

**Thomas HOPPER, Charles Costello, William Campbell, Philadelphia Eagles Football Club, Inc., City of Philadelphia, Philadelphia Parking Authority, Ogden Food Service Corp. and James Punch. (Two Cases).**

Superior Court of Pennsylvania.

Argued Oct. 21, 1996.

Filed Jan. 14, 1997.

---

Agostino Cammisa, Philadelphia, for appellants.

David F. White, Philadelphia, for appellee Costello.

Michael E. McGilvery, Francis J. McGovern and Mark R. Zolfaghari, Blue Bell, for appellee Campbell.

Before CIRILLO, President Judge Emeritus, and SAYLOR and HOFFMAN, JJ.

CIRILLO, President Judge Emeritus.

Michael and Susan Brandjord appeal from two orders entered in the Court of Common Pleas of Philadelphia, granting summary judgment. We affirm.

On October 23, 1988, Michael Brandjord was struck and seriously injured by a vehicle operated by James Punch. The uncontested facts reveal that Mr. Punch, together with appellees, Charles Costello, William Campbell, and Thomas Hopper, attended a football game between the Philadelphia Eagles and the Dallas Cowboys at Veterans Stadium ("the Vet") in South Philadelphia. Appellees arrived at the former JFK parking lot located on 11th Street at approximately 11:30 a.m. Upon arrival, they engaged in the tradition of "tailgating," enjoying food and consuming several 12 ounce cans of beer which they had purchased together. The atmosphere was very convivial. After approximately ninety minutes of "tailgating," Punch, Costello, Campbell, and Hopper entered the Vet. One of the group brought in a container, which he had filled with beer, planning on continuing consumption throughout the game. Punch, however, did not sit with Campbell or Costello during the game.

The game was very competitive, but in the end the Eagles defeated their hated rivals, the Cowboys. The game ended around 4:00 p.m., at which time Punch, Campbell, Costello, and Hopper reconvened at Punch's van. All were extremely excited that the Eagles had won. To celebrate the win and to avoid the heavy traffic clogging the roads around the stadium, the group decided to engage in post-game "tailgating." At around 6:00 p.m., because the traffic had subsided, the group decided to go home. Neither Campbell nor Costello noticed any indication that Punch was too intoxicated to drive home. Punch pulled his van out of the JFK parking lot, heading south on 11th Street. Costello, Campbell and Hopper were conversing. At the same time, Mr. Brandjord was crossing 11th Street on foot. As Mr. Brandjord attempted to cross the southbound lane of 11th Street, he was struck by the van driven by Punch. Mr. Brandjord suffered serious personal injuries. Shortly thereafter Punch was arrested and charged

with driving under the influence, aggravated assault, and reckless endangerment. He was later convicted of all charges.

Mr. Brandjord filed suit against the three passengers, Campbell, Costello and Hopper, alleging that they owed Brandjord a duty not to permit Punch to drive because they knew Punch was intoxicated.[1] Prior to discovery, passenger Hopper settled with the Brandjords. The Brandjords proceeded against Campbell and Costello. Following discovery, Campbell and Costello filed motions for summary judgment which were granted on June 20, 1994.[2] These consolidated appeals followed. The Brandjords present one issue for our consideration:

> Do motor vehicle passengers who plan and participate in the joint purchase and consumption of large quantities of alcoholic beverages along with [the] driver and further plan to attend crowded social events during the consumption of the alcohol, have a duty to persons within the ambit of danger created by the driver operating under the influence of alcohol?

When we review the grant of a motion for summary judgment, the appellate court's scope of review is well-settled: summary judgment is properly granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). Summary judgment may be granted only where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989). The moving party has the burden of proving that there is no

1. The Brandjords also filed suit against the City of Philadelphia, the Philadelphia Eagles, the Philadelphia Parking Authority, and James Punch. These parties have all settled or been dismissed and are, therefore, not involved in the present appeal.

2. This court recognizes that the Pennsylvania Rule of Civil Procedure that concerns motions for summary judgment was recently rescinded, on February 14, 1996, and revised. These revisions to the former Pa.R.C.P. 1035 are now embodied in Pa.R.C.P. 1035.1 and model the procedure of summary judgment motions after the federal rules. Because the revised rule did not become effective until July 1, 1996, and the present order was entered in June of 1994, the new rule is not applicable to this case.

genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). The record and any inferences therefrom must be viewed in the light most favorable to the nonmoving party, and any doubt must be resolved against the moving party. *Davis v. Pennzoil*, 438 Pa. 194, 264 A.2d 597 (1970). The trial court will be overturned on the entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *Hetrick v. Apollo Gas Co.*, 415 Pa.Super. 189, 608 A.2d 1074 (1992).

 "In order to hold a defendant liable for injuries sustained by a plaintiff, it must be shown that the defendant breached a duty of obligation **recognized by the law** which required him to conform to a certain standard of conduct for protection of persons such as the plaintiff." *Merritt v. City of Chester*, 344 Pa.Super. 505, 508, 496 A.2d 1220, 1221 (1985) (emphasis added) (citing *Macina v. McAdams*, 280 Pa.Super. 115, 120, 421 A.2d 432, 434 (1980)). "Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution." *Cruet v. Certain–Teed Corp.*, 432 Pa.Super. 554, 556, 639 A.2d 478, 479 (1994). We have articulated the boundaries of the imposition of duty for acts committed by a third party as follows:

> Although each person may be said to have a relationship with the world at large that creates a duty to act where his own conduct places others in peril, Anglo–American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act.

*Elbasher v. Simco Sales Service of Pennsylvania*, 441 Pa.Super. 397, 399–400, 657 A.2d 983, 984–85 (1995).

The Brandjords assert that appellees, Campbell and Costello, passengers in Punch's van, owed a duty to Mr. Brandjord and breached that duty by consuming alcohol with Punch and then failing to take reasonable steps to prevent him from driving. The Brandjords argue that this duty arises out of

Campbell's and Costello's planned and shared purchase and consumption of large quantities of alcohol in a parking lot both prior to and following a football game. The Brandjords explain that this duty should be recognized because it would force passengers to designate a driver or otherwise face potential liability for the actions of their driver if he or she were intoxicated. In essence, the Brandjords argue that this court should adopt the policy that "those who drink together pay together."

▮▮▮▮ A passenger does not owe a duty to a third-person where the driver of the vehicle is intoxicated, particularly when passengers and the driver merely participate in the joint procurement and ingestion of alcohol, absent the existence of a special relationship, joint enterprise, joint venture or a right to control the vehicle.[3] *Welc v. Porter*, 450 Pa.Super. 112, 119–20, 675 A.2d 334, 338 (1996) (citations omitted); *Clayton v. McCullough*, 448 Pa.Super. 126, 130–31, 670 A.2d 710, 713 (1995). Numerous policy considerations underlie our holdings in *Clayton* and *Welc*. To impose a duty on a passenger making him liable to others for what the driver chooses to do is inappropriate; such a rule assumes, incorrectly, that a passenger somehow shares in the management of the vehicle and the driver is amenable to the passenger's influence. Even more troubling, however, is that such a duty would open a veritable Pandora's box of potential liability and responsibility problems. Potential liability might exist against the passenger, as a result of his attempting to prevent the owner of a car from driving, for conversion, assault, battery, or even criminal theft or robbery charges. Moreover, the passengers may not

**3.** The Brandjords argue that appellees and Punch were engaged in a "joint enterprise" so as to find appellees vicariously liable for Punch's actions. The trial court was correct in dismissing this argument, because the Brandjords failed to set forth an equal right to a voice in the direction of the enterprise. *See* Restatement (Second) of Torts § 941, cmt. c; *Welc, supra*, (*citing Baugh v. McCallum*, 140 Pa.Super. 276, 280, 14 A.2d 364, 367 (1940)) (". . . it is not sufficient to prove that parties were merely riding together or that one had accepted a ride for pleasure or that there existed some common purpose between the driver and the passenger to be served in the use of the vehicle . . . Rather, the test is whether the parties had a right of equal control.").

be aware of the amount of alcohol consumed by the driver. Adults cannot be charged with the supervision of other adults merely because they arrived and departed together. There is also the potential mischief of affording intoxicated drivers a defense to criminal charges. Imposing a duty on passengers, therefore, would be patently unfair. *Cruet, supra.*

██ In the present case, there are no facts to support finding the appellees responsible of any circumstance other than the mere participation in the procurement and ingestion of alcoholic beverages. Because liability cannot be premised upon mere participation by passengers in the procurement and ingestion of alcoholic beverages with a driver, *Clayton, supra; Welc, supra,* we conclude that there was no issue of any material fact. Appellees, Campbell and Costello, therefore, were entitled to summary judgment. *Musser, supra; Thompson Coal, supra; Davis, supra.*

The Brandjords argue that appellees' joint purchase, transportation, and consumption of alcohol with the driver renders liability proper under a "concerted tort" theory as articulated in the Restatement (Second) of Torts §§ 876, 877. The Brandjords assert that under the facts of this case, sections 876 and 877 would impose liability upon Campbell and Costello. We reiterate that we are not bound by section 876 of the Restatement (second), as "it has not been adopted by the **Pennsylvania Supreme Court.**" *Clayton,* 448 Pa.Super. at 131, 670 A.2d at 713 (emphasis added). Even assuming, however, that we are required to analyze the Brandjords' claim pursuant to section 876, we conclude that the Brandjords, as a matter of law, have failed to show that appellees are liable under the Restatement.[4]

Section 876 of the Restatement (Second) of Torts, states:

4. The Brandjords make separate arguments for liability under subsections (a) and (b) of section 876 as well as section 877. Courts that have relied on the Restatement in passenger liability cases, however, do not distinguish between 876 and 877. *See Clayton, supra; Welc, supra.* Consequently, we will treat the Brandjords' arguments under sections 876 and 877 as one under 876.

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . .

Restatement (Second) of Torts § 876 (1990). Several other jurisdictions have had the opportunity to address the Restatement section 876 in the context of passenger liability for an intoxicated driver. In *Welc v. Porter, supra,* this court extensively reviewed cases addressing section 876. We explained:

In those jurisdictions which permitted recovery, all involved situations where **the plaintiff pled or proved facts which clearly demonstrated that the passenger or defendant actively encouraged the driver to commit tortious conduct** (emphasis added). *See, e.g., . . . Sanke v. Bechina,* 216 Ill.App.3d 962, 964–65, 971, 160 Ill.Dec. 258, 260–61, 264, 576 N.E.2d 1212, 1214–15, 1218 [ (1991) ] (passenger's encouragement that driver ignore a stop sign and exceed the posted speed limit fell squarely within the conduct contemplated by section 876); . . . *Price v. Halstead,* 177 W.Va. 592, 597, 355 S.E.2d 380, 389 (1987) (passenger's conduct substantially assisted or encouraged the driver's continued use of alcohol and drugs by providing these substances to him while he drove the vehicle). In comparison, **liability has not been imposed in those jurisdictions where it was established that the passengers were merely companions who did nothing to substantially encourage or assist the driver in his or her voluntary consumption of alcohol and operation of the vehicle while intoxicated** (emphasis added). *See, e.g., Cully v. Bianca,*[5] 186 Cal.App.3d 1172, 1178, 231 Ca[l].Rptr. 279, 282–83 (1986) (other than passengers' accompaniment of driver after they obtained and drank tequila, the plaintiff pointed to no facts indicating substantial assistance and encouragement to the driver) . . .

---

**5.** *Cully* was superseded by statute on other grounds. *See Baker v. Sudo,* 194 Cal.App.3d 936, 942–43, 240 Cal.Rptr. 38, 42 (1987).

*Stock v. Fife*, 13 Mass.App. 75, 82 n. 10, 430 N.E.2d 845, 849–50 n. 10, *review denied*, 385 Mass. 1103, 441 N.E.2d 1043 (1982) (facts did not permit recovery under section 876 where there was no showing that the passengers forced, pressured, or induced driver to drink); . . . *Lind v. Slowinski*, 450 N.W.2d 353, 356–57 (Minn.App.1989) (passengers did not give substantial assistance and encouragement to driver where the passengers' and driver's consumption of alcohol was entirely voluntary) . . .

*Welc*, 450 Pa.Super. at 120–21, 675 A.2d at 338–39.

In the present case the Brandjords offer no facts which indicate that Costello and Campbell pressured, coerced, or induced Punch to drink at any time during the course of the day. *Welc, supra.* Conspicuously absent are facts which demonstrate appellees' furnishing of alcohol for Punch's consumption **while** Punch was driving. Additionally, there are no facts presented that appellees forced or coerced Punch into driving home, knowing that he was intoxicated. To the contrary, the facts show that appellees merely accompanied Punch into his vehicle, because Punch had told them that he wanted to leave.[6]

The Brandjords argue that because appellees planned, purchased, and consumed beer together with Punch that this amounts to "substantial assistance." The Brandjords, however, can point to no cases in any jurisdiction to support their argument. In fact, in *Welc v. Porter, supra,* we specifically concluded that where a passenger and driver purchased a large quantity of beer, consumed it together, and were subsequently involved in an automobile accident that this scenario as a matter of law was not "substantial assistance" within the ambit of section 876. *Welc*, 450 Pa.Super. at 121–22, 675 A.2d at 339; *see also Cully, supra* (where passengers and driver pooled money and bought a bottle of tequila which they

---

**6.** The Brandjords contest the trial court's determination that appellees were not aware that Mr. Punch was intoxicated. However, this fact is not material to the determination as to whether appellees substantially assisted in Mr. Punch's conduct. We have already stated that knowledge of a person's intoxication and failure to restrain that person from driving is not substantial assistance within the meaning of section 876.

consumed together court could not find "substantial assistance"). Consequently, this argument lacks merit.

Alternatively, the Brandjords argue that a duty arises under a theory of civil accomplice liability. The crux of their argument is based upon the holding of *Congini by Congini v. Portersville Valve Co*, 504 Pa. 157, 470 A.2d 515 (1983). There, our supreme court found that an adult social host who furnishes alcohol to a minor can be civilly liable for that minor's subsequent actions on a theory that the adult is an accomplice in the minor's violation of 18 Pa.C.S.A. § 6308 of the Crimes Code which prohibits, "... attempt[s] to purchase, purchase, consum[ption], posess[ion] or transport[ation] of any alcohol ..." *Congini*, 504 Pa. at 161, 470 A.2d at 517–18. The court in *Congini* noted that the adult need not be criminally charged as an accomplice to the minor's offense for a finding of civil liability. *Id.* The Brandjords explain that Campbell and Costello's liability is analogous to an adult who furnishes alcohol to a minor. They argue, therefore, they should be liable civilly if the Brandjords can prove that they are accomplices to Mr. Punch's driving under the influence and reckless endangerment. We disagree.

*Congini* dealt with the particularly acute problem of adults furnishing alcohol to minors, the latter being a class of people whom the legislature deemed incompetent to handle the effects of alcohol. *Congini, supra.* The court explained that because the legislature considered minors incapable of safely ingesting alcohol, the purpose of section 6308 was to protect minors and third-parties from injury.[7] *Congini*, 504 Pa. at 162–63, 470 A.2d at 518. Consequently, the court reasoned that it was proper to find that the violation of the statute as an accomplice was negligence *per se*. *Id.* By contrast, Punch,

---

7. The *Congini* court stated:

> Section 6308 of the Crimes Code represents an obvious legislative decision to protect both minors and the public at large from the perceived deleterious effects of serving alcohol to persons under twenty-one years of age. Thus, we find that defendants were negligent per se in serving alcohol to the point of intoxication to a person less than twenty-one years of age.

*Congini*, 504 Pa. at 163, 470 A.2d at 518.

Campbell, and Costello are all adults. Thus, in the eyes of the law, they are presumed capable of handling the effects of alcohol. *Klein v. Raysinger*, 504 Pa. 141, 470 A.2d 507 (1983). Accordingly, we have never held an adult liable for serving alcohol to another adult. *Klein*, 504 Pa. at 147, 470 A.2d at 510 (explicitly rejecting social host liability); *see Kapres v. Heller*, 536 Pa. 551, 554–57, 640 A.2d 888, 890–91 (1994) (explaining that the civil accomplice liability rule enunciated in *Congini* is to be narrowly construed). While the legislative purpose behind our Commonwealth's driving under the influence laws is to protect others from the potential hazard of intoxicated drivers, if the person is an adult, it is his choice to consume alcohol and drive. *Klein*, 504 Pa. at 147–48, 470 A.2d at 510–11. Consequently, the proximate cause of any accident would be his own decision whether to drink and drive, not another's who provides him alcohol or fails to prevent him from driving. *Id.*

The Brandjords contend that this is not a typical case of social host liability, however, because neither Costello nor Campbell are hosts. The Brandjords explain that Costello and Campbell shared with Punch in the purchase, transportation, and consumption of alcohol and do not deserve more protection, because, unlike hosts, they were able to keep track of their friends. Even assuming that Campbell and Costello could account for Punch's whereabouts the entire time, which is not borne out in the facts alleged, the principle enunciated in *Klein, supra,* is not limited merely to protect hosts of parties. Our supreme court stated in *Klein*, "... in the case of an ordinary able bodied man it is the consumption of the alcohol, rather than the furnishing of the alcohol, which is the proximate cause of any subsequent occurrence." *Klein*, 504 Pa. at 148, 470 A.2d at 510. Here, Punch chose to drink and chose to drive. These actions caused Mr. Brandjord's injuries. We, therefore, decline the Brandjords invitation to hold appellants civilly liable as accomplices.

Orders affirmed.