Diane Smart WILLARD, Administratrix of the Estate of Peter Smart, Deceased, Appellee,

v.

INTERPOOL, LTD., Columbus Line, Inc., Transact Corporation, Holt Cargo Systems, Inc., Trac Lease, Inc., Blue Star Pace, Ltd., Blue Star (North America) Ltd., Blue Star Line, Inc., Appellees,

v.

Fruehauf Trailer Corporation, Holt Cargo Systems, Inc., Appellees,

v.

Hamburg Sudamerikanische D.G., Appellee,

Inchcape Shipping Services, Inc., Appellant.

Diane Smart Willard, Ind. and as Administratrix of the Estate of Peter Smart, Deceased, Appellee,

v.

Inchcape Shipping Services, Inc., Appellant.

CY Agency, Inc. Southern Steam, Inc., Appellees,

v.

Hamburg Sudamerikanische D.G., Interpool, Ltd., Holt Cargo Systems, Inc., Blue Star Pace, Ltd., Blue Star (North America) Ltd., Blue Star Line, Inc., Fruehauf Trailer Corporation, Columbus Line, Inc., Transact Corporation, Trac Lease, Inc., Appellees.

Diane Smart Willard, Ind. and as Administratrix of the Estate of Peter Smart, Deceased, Appellee,

v.

Hamburg Sudamerikanische D.G., Columbus Line, Inc., Appellees,

v.

Inchcape Shipping Services, Inc., Appellant.

Interpool, Ltd., Holt Cargo Systems, Inc., Blue Star Pace, Ltd., Blue Star (North America) Ltd., Blue Star Line, Inc., Fruehauf Trailer Corporation, Appellees.

Superior Court of Pennsylvania.

Argued June 28, 2000.

Filed Aug. 15, 2000.

Robert B. White, Philadelphia, for Inchcape, appellant.

Charles J. Daly, Philadelphia, for Columbus Line and Hamburg, appellees.

Before KELLY, MUSMANNO and HESTER, JJ.

HESTER, J.:

¶ 1 Inchcape Shipping Services, Inc. ("Inchcape") appeals the trial court's order finding that Appellees had no obligation to indemnify Appellant in an underlying action. We affirm.

¶ 2 The trial court has succinctly set forth the undisputed facts as follows.

On March 18, 1993, plaintiff, Peter Smart, was operating a forklift to unload a container at the Pattison Avenue loading dock in Philadelphia. As he worked, the chassis on which the container was sitting began to roll away from the loading dock, causing the forklift to fall between the loading dock and the trailer.

As a result of serious injuries and the subsequent death of the plaintiff, Mr. Smart and his personal representative initiated these lawsuits. The plaintiff alleged that had Inchcape Shipping Services, Inc. ("Inchcape") recommended to Columbus Line, Inc. ("Columbus Line") that mechanical brakes, known as "spring brakes" or "maxi-brakes", be retrofitted onto the cargo chassis, the accident would have been prevented. Hamburg Sudamerikanische, D.G. ("Hamburg Sud") retained Columbus Line as its general agent in the United States to purchase and lease cargo containers and chassis for use in the container trade. See generally, Stipulated Record for Trial, Items 1a–1v.

Following the settlement of the litigation, Inchcape asserted its claim for indemnification from Columbus Line and Hamburg Sud for $200,000, plus legal fees and expenses in the amount of $77,958.96. See generally, Stipulated Record for Trial, Items 1w–1ac.

The three defendants agreed to submit their dispute to this Court by the presentation of a stipulated non-jury trial, their legal briefs, and oral argument. After careful consideration of the facts and the legal arguments presented by the parties, the claims for indemnification, legal fees and expenses by Inchcape Shipping Services, Inc. must be DENIED.

Trial Court Opinion, 9/22/99, at 1. Appellant timely filed post-trial motions which were denied on November 8, 1999. This appeal followed.

¶ 3 We note initially that the complaint in the original lawsuit was filed by the decedent's estate on June 29, 1993. On May 8, 1997, Appellees settled with Mr. Smart's estate for $1,200,000. Thus, the only remaining defendant in the action was Appellant. On July 1, 1997, Appellant settled with Mr. Smart's estate for $200,000 but expressly retained the right to proceed to trial on its indemnity claim against Appellees. After a trial was conducted on this issue, the trial court decided the indemnity claim in favor of Appellees. That is the subject of the underlying appeal.

¶ 4 Appellant raises two issues before us. The first issue surrounds whether the trial court erred in not applying §§ 438

and 439 of the Restatement (Second) of Agency. Appellant alleges in his second issue that the trial court erred in holding that Appellant had no duty of care and liability to the decedent. For reasons to follow, we find both of these issues to be without merit.

¶ 5 Appellant asserts that under §§ 438 and 439 of the Restatement (Second) of Agency, an agent may settle a tort claim with a third party and recover indemnity from its principal without first establishing its liability to the third party. While it is true that these sections stand for that proposition, Appellant concedes, and our own independent research has confirmed, that Pennsylvania has not adopted these Restatement sections as part of its jurisprudential interpretation of agency law. Appellant therefore requests this Court to formally adopt them. The pertinent sections Appellant cites to are as follows.

§ 438. Duty of Indemnity; the Principal

(1) A principal is under a duty to indemnify the agent in accordance with the terms of the agreement with him.

(2) In the absence of terms to the contrary in the agreement of employment, the principal has a duty to indemnify the agent where the agent

. . . .

(b) suffers a loss which, because of their relation, it is fair that the principal should bear.

§ 439. When Duty of Indemnity Exists Unless otherwise agreed, a principal is subject to a duty to exonerate an agent who is not barred by the illegality of his conduct to indemnify him for:

. . . .

(c) payments of damages to third persons which he is required to make on account of the authorized performance of an act which constitutes a tort or a breach of contract;

(d) expenses of defending actions by third persons brought because of the agent's authorized conduct, such actions being unfounded but not brought in bad faith[.]

Restatement (Second) of Agency. For reasons stated below, we reject Appellant's invitation to adopt these sections.

¶ 6 The trial court did consider these sections before making its determination but chose not to apply them. The only authority Appellant cites in support of why now we should adopt these specific sections are three Pennsylvania federal district court cases decided in 1966, 1978, and 1986, respectively. Although Appellant admits that no Pennsylvania court has incorporated these sections into its case law, it cites to several of our sister state courts that have adopted them.

Thus, we are aware that appellant's position is supported by some state and federal case law; however, we note that none of the cases on this topic is binding on this court. All of them have only persuasive, not precedential, value in the matter before us. *Commonwealth v. Griffin [Giffin]*, [407 Pa.Super. 15,] 595 A.2d 101, 107 (Pa.Super.1991) ("While decisions of the lower federal courts have a persuasive authority, they are not binding on Pennsylvania courts even where they concern federal questions"); *Appeal of Penn–Lehigh Corp.*, [191 Pa.Super. 649,] 159 A.2d 56 (1960) (decisions of other states with identical issues are not binding on Pennsylvania courts).

*Eonda v. Affinito*, 427 Pa.Super. 317, 629 A.2d 119, 122, n. 2 (Pa.Super.1993). *See also Appeal of Patricia Leed*, 754 A.2d 702, 711, 2000 WL 729956, at *8 (Pa.Super.2000) (decisions of the federal district courts and courts of appeal, including those of the Third Circuit Court of Appeals, are not binding on Pennsylvania courts, even when a federal question is involved).

¶ 7 Despite the lack of controlling precedent, Appellant asks us to adopt these sections from the Restatement (Second) Agency nevertheless. Appellant argues

that under the facts of this case, sections 438 and 439 would impose liability upon Appellees. "We reiterate that we are not bound by [this] section of the Restatement (Second), as it has not been adopted by the *Pennsylvania Supreme Court*." *Brandjord v. Hopper*, 455 Pa.Super. 426, 688 A.2d 721, 724 (1997) (emphasis in original) (citing *Clayton v. McCullough*, 448 Pa.Super. 126, 670 A.2d 710, 713 (1996)). Therefore, since our Supreme Court has yet to adopt these sections, and since our legislature has not seen fit to enact these sections into law, we decline to adopt them as well.

¶ 8 It is undisputed that Appellant was an agent for Appellees. Appellee Columbus Line was acting on behalf of its principal Hamburg Sud during the period it leased the chassis on which Mr. Smart was injured. In turn, Appellee Columbus Line retained Appellant to inspect containers and the chassis and to determine if they were in a state of good repair. However, the record does not contain *any* written or oral indemnity agreement between Appellant and Appellees. Appellant admits that no such agreement was made but contends that fairness should require us to rule that implicitly an indemnity agreement existed. Appellants brief at 12–13. In the absence of an express agreement between Appellant and Appellees, we disagree with Appellant's reasoning that we should read into their contract that an implicit indemnity clause existed.

¶ 9 The seminal case in Pennsylvania concerning a suit for indemnification by an agent against a principal is *Tugboat Indian Company v. A/S Ivarans Rederi*, 334 Pa. 15, 5 A.2d 153 (1939). The trial court found this case to be dispositive of the underlying issues and we are compelled to agree. In that case, our Supreme Court held, "[I]n order for a party to recover indemnity where there has been a voluntary payment [settlement], it must appear that the party paying the settlement was himself legally liable and could have been compelled to satisfy the claim." *Id.* 334 Pa. at 21, 5 A.2d 153.

¶ 10 In *Tugboat*, the defendant Tugboat settled with the plaintiff for $2,500.00. Tugboat also expended $1,290.30 for defense of the suit. Before settling, however, counsel for Tugboat wrote letters to counsel for A/S Ivarans Rederi (Rederi) and Moore & McCormick, Inc. (Moore), demanding that these defendants undertake defense of the suit. They refused, and thus Tugboat settled for fear that a jury would assess substantial damages against it.

¶ 11 In addition, prior to effecting the settlement of the case with plaintiff, Tugboat gave notice of the proposed payment and expressly reserved the right of action by way of subrogation against the remaining defendants. Tugboat maintained that where a person is secondarily liable for damages to an injured party, he may recover indemnity from the one primarily responsible; it is not a prerequisite that he should have defended an action against him to a jury verdict. Tugboat asserted that such a secondarily liable defendant may settle the claim voluntarily and recover against the person from whom it was entitled to indemnity if the settlement was fair and reasonable and if it gave proper notice.

¶ 12 Appellant herein is making the same argument. In rejecting this assertion, our Supreme Court held that one who has ample opportunity to have his rights litigated and can utilize all processes of law to protect himself against an unwarranted demand, but chooses to compromise the claim, is not entitled to a right of recovery over by way of subrogation or indemnity, since payment thus made is not compulsory. The Court further held that "Pennsylvania cases are unanimous in denying restitution to a person who, contending that another has no valid claim against him, nevertheless makes payment solely because of the threat or the institution of litigation to enforce the demand." *Id.*, 334 Pa. at 20, 5 A.2d at 155.

¶ 13 This holding was reiterated in *Martinique Shoes, Inc. v. New York Progressive Wood Heel Co.*, 207 Pa.Super. 404, 217 A.2d 781 (1966), where we reaffirmed the principle that a party making a voluntary payment assumes the risk of being able to prove the actionable facts upon which his liability depends as well as the reasonableness of the amount which he pays. *See also Fox Park Corporation v. James Leasing Corp*, 433 Pa.Super. 505, 641 A.2d 315, 317 (1994) (party which settles claims and then seeks indemnification must be able to prove its liability and the reasonableness of its settlement payments).

¶ 14 The trial court in the case at bar concluded that as a matter of law, Appellant would not have been liable to the decedent's estate. It is axiomatic that the elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss. *Campo v. St. Luke's Hospital*, 755 A.2d 20, 2000 PA Super 155, ¶ 10. The trial court found that a party does not owe a duty of care to every individual with whom that party may come into contact. The court concluded that Appellant's duty of care was to its principal, Columbus Line. Although Appellant alleges that its liability to Mr. Smart is grounded in its failure to advise Columbus Line that the chassis was not fitted with spring brakes, it admits that the chassis was leased by Columbus Line for the business use of its principal, Hamburg Sud, and that the authority of Appellant to authorize repairs and modifications of the chassis *was circumscribed by Columbus Line*. Appellant's brief at 32 (emphasis added).

¶ 15 The trial court found that assuming *arguendo* Appellant owed a duty to the decedent, it nevertheless did not establish at trial that the failure to advise Columbus Line about the brakes was the proximate cause of decedent's injuries. The trial court relies on section 433 of the Restatement (Second) of Torts, which describes which factors are important in determining whether conduct is a substantial factor in bringing about a harm. We note that this court expressly has adopted this section. *See American Truck Leasing, Inc. v. Thorne Equipment Co.*, 400 Pa.Super. 530, 583 A.2d 1242, 1243 (1991), where we stated what constitutes a substantial factor as follows:

The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another: (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and (c) lapse of time.

¶ 16 The trial court, acting as fact-finder, considered the expert report of Kenneth Eland, which concluded that "[H]ad there been chocks in place at the wheels of the trailer, the trailer would not have moved." Trial Court Opinion, 9/22/99, at 4 (citing Expert Report of Kenneth Eland, 11/9/95, at 15). It is settled that credibility determinations are within the province of the fact-finder and we may not overturn the credibility determinations of the fact-finder. *Cambria–Stoltz Enterprises v. TNT Investments*, 747 A.2d 947 (Pa.Super.2000). In finding Appellant could not have been liable to the decedent as a matter of law, the trial court also considered the fact that Appellant proffered *no evidence* that Appellees would have accepted a recommendation to remove either the individual accident chassis or the entire chassis for refurbishment. After a thorough review of the record, we agree with that conclusion.

■ ¶ 17 Finally, we find dispositive our holding in *Pallante v. Harcourt Brace Jovanovich, Inc.*, 427 Pa.Super. 371, 629 A.2d

146 (1993), where we concluded that the release of the principal acts as a release of the agent (relying on *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 560 A.2d 1380 (1989)). We stated,

> Because the law seeks to protect an injured party's right to payment for a single injurious act from either a vicariously liable principal or an independently liable agent, the party's decision to settle with and release one acts as a release of the other, given their non-joint tortfeasor status. We hold that where a principal who is vicariously liable for the negligent act of its agent is released by the injured party after settlement of the claim, the release *is a release of the agent as well* and no suit may be maintained against the agent for its independent act of negligence.

*Pallante*, 629 A.2d at 150 (emphasis added). Hence, even if we were to hold that the trial court erred in determining that Appellant could not have been liable to the decedent, which we do not, we are compelled to agree that once Appellees settled with decedent's estate, Appellant, as their agent, was released from further liability.

¶ 18 Accordingly, we conclude that the trial court did not err in refusing to apply sections 438 and 439 of the Restatement (Second) of Agency. We further find the trial court did not abuse its discretion in finding that Appellant could not have been liable to decedent as a matter of law. We finally note that once Appellees settled with decedent in the original action, Appellant was discharged from any liability. Thus, Appellant settled with the decedent's estate at its own peril. For all the reasons stated above, we affirm the order.

¶ 19 Order affirmed.