**Travelers Indemnity Co. v. Mahiai**

*Daniel M. Brown,* for plaintiffs.
*Michael W. Wagman,* for defendant.

CULLEN, *J.,* October 6, 2005—Before the court for disposition is the motion for summary judgment filed by defendant, Matthew D. Weaver. For the reasons set forth herein, defendant's motion for summary judgment will be granted in part and denied in part.

## PROCEDURAL AND FACTUAL BACKGROUND

Cloister Gardens L.P. is a Pennsylvania limited partnership that owns Cloister Gardens Apartments in Ephrata, Pennsylvania.[1]

---

1. Residential lease agreement, page 1; management agreement, para. 1.

On May 15, 1995, Cloister Gardens L.P. entered into a management agreement with RP Management Inc. for a term of five years with automatic renewals for subsequent terms of one year.[2] The management agreement provided that RP Management Inc. would completely manage the apartments, including but not limited to the leasing, operating, and care of the apartments.[3]

In this capacity, RP Management Inc. purchased an insurance policy for the apartments from The Travelers Indemnity Co. Pursuant to a written lease agreement with Cloister Gardens L.P., Dawn Mahiai and Matthew D. Weaver, defendant, were tenants in apartment no. 335 at the Cloister Gardens Apartments.[4]

On June 8, 2001, defendant left the apartment to go to work. While alone in the apartment, Ms. Mahiai walked onto the apartment's exterior deck and smoked a cigarette. When she finished smoking, Ms. Mahiai discarded the cigarette into a plastic fish tank and drove to a drugstore where she shopped for 20 to 30 minutes. During this time, a fire ignited on the deck and quickly spread to the adjoining apartment.

The fire department responded and extinguished the fire. An investigation by the Pennsylvania State Police Fire Marshal determined that the fire was an accident caused by the discarding of Ms. Mahiai's cigarette into the fish tank.[5]

---

2. Management agreement, para. 1.

3. Management agreement, para. 2(a).

4. Residential lease agreement, page 1.

5. Pennsylvania State Police Fire Investigation report/worksheet, pages 2-3.

The fire caused extensive property damage that prompted RP Management Inc. to submit an insurance claim to The Travelers Indemnity Co., which paid $86,427.97 for the losses.

On February 24, 2003, The Travelers Indemnity Co., as subrogee of RP Management Inc., and RP Management Inc. commenced this action against Ms. Mahiai and defendant seeking to recover the amount paid for the fire damage. Plaintiffs argue the fire was caused by the negligence and/or carelessness of Ms. Mahiai and defendant and that these individuals breached their lease.

On October 24, 2003, defendant filed an answer and new matter, and on May 2, 2005, he filed a motion for summary judgment and partial summary judgment.[6]

On June 3, 2005, plaintiffs filed their first memorandum, and on August 22, 2005, pursuant to this court's order, plaintiffs filed a second supplemental memorandum.

## DISCUSSION

Defendant frames his motion for summary judgment and partial summary judgment in response to the complaint and raises four issues: (1) whether defendant owed a duty to RP Management Inc. to protect the property from damage and, therefore, may be liable in negligence; (2) whether contractual privity exists between RP Management Inc. and defendant so as to permit plaintiffs to bring a breach of contract action against defendant; (3) whether the language of the indemnity "pass through" provision of the lease is so lacking in specificity as to

---

6. Ms. Mahiai has not responded to plaintiffs' complaint.

render it unenforceable; and (4) whether an insurance company subrogee may recover an amount in excess of the subrogor's insurable interest.

These motions for summary judgment were made pursuant to Pennsylvania Rule of Civil Procedure 1035.2 which provides: "[a]fter the pleadings are closed . . . any party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2.

A grant of summary judgment is proper where the evidentiary record either "(1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury." *McCarthy v. Dan Lepore & Sons Co. Inc.,* 724 A.2d 938, 940 (Pa. Super. 1998). Thus, "[i]f the non-moving party fails to come forward with sufficient evidence to establish or contest a material issue to the case, the moving party is entitled to judgment as a matter of law." *Id.* (citing *Ertel v. Patriot-News Co.,* 544 Pa. 93, 100-102, 674 A.2d 1038, 1042 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996)).

"A material fact is one that directly affects the outcome of the case." *Gerrow v. Shincor Silicones Inc.,* 756 A.2d 697, 700 (Pa. Super. 2000).

A court must view the record "in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 145, 615 A.2d 303, 304 (1992).

The purpose of the summary judgment procedure is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Phaff v. Gerner,* 451 Pa. 146, 151, 303 A.2d 826, 829 (1973). The court "must ignore controverted facts appearing only in the pleadings" and restrict its consideration to material "filed in support of and in opposition to the motion for summary judgment" and the "uncontroverted" allegations of the pleadings. *Id.* at 151, 303 A.2d at 830; *Washington Federal Savings & Loan Association v. Stein,* 357 Pa. Super. 286, 289, 515 A.2d 980, 981 (1986).

Once a motion for summary judgment is made and properly supported, the opposing party cannot rest on the allegations or denials in the pleadings. *Rapagnani v. Judas Co.,* 736 A.2d 666, 668 (Pa. Super. 1999). "Rather, the adverse party must identify evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced." *Id.*

## 1. *Negligence*

Because plaintiffs' complaint, Count II, alleges that the fire was caused due to the negligence and/or carelessness of defendant, the plaintiff must establish the facts essential to a negligence cause of action.

In order to state a cause of action for negligence, the plaintiff must demonstrate the following:

"(1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks; (2) failure on the part of the defendant to conform to that standard of conduct, *i.e.,* a breach of duty; (3) a reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach." *Gutteridge v. A.P. Green Services Inc.,* 804 A.2d 643, 654 (Pa. Super. 2002).

"The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Althaus ex rel. Althaus v. Cohen,* 562 Pa. 547, 552, 756 A.2d 1166, 1168 (2000). To determine whether "a duty exists in a particular case," a court must weigh the following factors: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and forseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Id.* at 553, 756 A.2d at 1169.

After weighing these factors, the Superior Court has articulated the general duty owed for acts committed by third parties:

"Although each person may be said to have a relationship with the world at large that creates a duty to act where *his own* conduct places others in peril, Anglo-American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to inter-

vene, is not sufficient to create a duty to act." *Elbasher v. Simco Sales Service of Pennsylvania,* 441 Pa. Super. 397, 400, 657 A.2d 983, 984-85 (1995). (emphasis in original)

However, an exception to this general rule exists "where a defendant stands in some special relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct, which gives to the intended victim a right to protection." *Emerich v. Philadelphia Center for Human Development Inc.,* 554 Pa. 209, 216-17, 720 A.2d 1032, 1036 (1998).

In this case, based on the record and an analysis of the case law, the court grants defendant's motion for summary judgment as to Count II of the complaint which alleges that the fire was caused due to the negligence and/or carelessness of defendant.

The court finds the general rule that "there is no duty to control the conduct of a third party to protect another from harm" applies because defendant does not stand in a special relationship with either (A) "the person whose conduct needs to be controlled," or (B) "the intended victim." *Id.*

## A. The Person Whose Conduct Needs To Be Controlled

Plaintiffs' complaint asserts that because defendant lived with Ms. Mahiai, they shared a special relationship sufficient to impose a duty on defendant and owed to RP Management Inc. to restrain Ms. Mahiai's conduct. In other words, as defendant lived with Ms. Mahiai and was aware of her conduct, he owed a duty to RP

Management Inc. to prevent Ms. Mahiai from disposing of her cigarettes in the combustible container. Although plaintiffs, in their memorandum of law in support of the plaintiffs' response to the motion for summary judgment and partial summary judgment, somewhat appear to have withdrawn this argument, the court will briefly address the subject to clarify the matter.

"Those instances where a special relationship exists between the actor (defendant) and the third person (wrongdoer) which are sufficient to impose a duty are set forth in the Restatement in sections 316-319." *Brezenski v. World Truck Transfer Inc.,* 755 A.2d 36, 41 (Pa. Super. 2000). (footnote omitted)

Restatement section 316 involves the duty of a parent to control his or her child. *Id.* "Section 317 involves the duty of a master to control the conduct of a servant, [and] section 318 addresses the duty of a possessor of land or chattel to control the conduct of licensees." *Id.*

Section 319 provides that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." *Brisbine v. Outside in School of Experiential Education Inc.,* 799 A.2d 89, 93 (Pa. Super. 2002).

In this case, defendant's connection to Ms. Mahiai does not fall within the class of relationships provided for in Restatement sections 316-319. Ms. Mahiai is not a child, a servant, or a licensee. Further, defendant has never taken charge of Ms. Mahiai. Rather, at the time of the fire, Ms. Mahiai was a 24-year-old independent adult.

"Adults cannot be charged with the supervision of other adults" merely because they live together. *Brandjord v. Hopper,* 455 Pa. Super. 426, 431-32, 688 A.2d 721, 724 (1997) (deciding that no duty of care existed between two adults merely because they traveled within the same vehicle). Creating "such a duty would open a veritable Pandora's box of potential liability and responsibility problems." *Id.*

Accordingly, the court finds that defendant does not stand in a special relationship with "the person whose conduct needs to be controlled." *Emerich v. Philadelphia Center for Human Development Inc.,* 554 Pa. 209, 216-17, 720 A.2d 1032, 1036 (1998).

## B. The Intended Victim

Plaintiffs primarily argue that because defendant entered into a lease requiring that the unit be returned in good condition, defendant stood in a special relationship with RP Management Inc., sufficient to impose a duty of care owed to the company to protect the property from damage.

The gist of the action doctrine maintains "the conceptual [difference] between breach of contract claims and tort claims. . . . As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll Inc. v. Elias/Savion Advertising Inc.,* 811 A.2d 10, 14 (Pa. Super. 2002).

Although breach of contract claims and tort claims "derive from a common origin," differences between contract breach and civil actions for tort "have developed at common law. . . . To permit a promisee to sue his promisor in tort for breaches of contract inter se would

erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions." *Id.*

"The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole." *Id.* at 15. "A claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *Id.* at 14.

In this case, plaintiffs argue that defendant breached a duty of care to protect the premises from damage and that this duty of care arose from defendant's lease. The duties regarding care of the premises were created and grounded solely in the lease. In other words, the alleged failure only "arose in the course of the parties' contractual relationship[s]." *Id.* at 20.

Moreover, the damages are of a type that "would be compensable in an ordinary contract action; thus, the claim would essentially duplicate a breach of contract action" to recover the amount of the damage done to the premises. *Id.* at 21.

Accordingly, the court finds that defendant does not stand in a special relationship with "the intended victim of the conduct, which gives to the intended victim a right to protection." *Emerich v. Philadelphia Center for Human Development Inc.,* 554 Pa. 209, 216-17, 720 A.2d 1032, 1036 (1998).

As a special relationship between the parties does not exist, the court applies the general rule that "there is no duty to control the conduct of a third party to protect another from harm" and grants defendant's motion for summary judgment as to plaintiffs' Count II which al-

leges that the fire was caused due to the negligence and/ or carelessness of defendant. *Id.*

## 2. *Breach of Contract*

Because plaintiffs' complaint, Count III, alleges that defendant is liable for breaching the lease, plaintiffs must establish the facts essential to a breach of contract action.

"Three elements are necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Omicron Systems Inc. v. Weiner,* 860 A.2d 554, 564 (Pa. Super. 2004).

"Generally a party to a contract does not become liable for a breach thereof to one who is not a party thereto." *Evans v. Otis Elevator Co.,* 403 Pa. 13, 18, 168 A.2d 573, 575 (1961).

"When there has been no direct transaction between the plaintiff and the defendant, it is usually expressed by saying that they are not in 'privity' of contract. Privity of contract exists when there is a connection or relationship which exists between two or more contracting parties." *Global Payments Direct v. EVS Holding Co.,* no. 1373, 2005 WL 2100102, at *13 (Pa. Com. Pl. 2005). In other words, "[f]or parties to be considered to be in privity, a contractual relationship must exist between them." *Phillips v. Cricket Lighters,* 576 Pa. 644, 654, 841 A.2d 1000, 1006 (2003).

"[P]rivity of contract is *personal* privity, and is confined to the *persons* of the contracting parties." *Deynzer v. Columbia Gas of Pennsylvania Inc.,* 875 A.2d 298, 301 (Pa. Super. 2005). (emphasis in original)

However, there are two circumstances under which a non-contracting party may bring a breach of contract action against a party to the contract: (A) where there has been an assignment of interests, and (B) where an agent is acting on behalf of a principal. *Bird Hill Farms v. U.S. Cargo & Courier,* 845 A.2d 900, 907 n.3 (Pa. Super. 2004) ("An assignment of a leasehold terminates only the privity of estate between lessor and lessee; the privity of contract survives."); see generally, *Scott v. Purcell,* 490 Pa. 109, 117, 415 A.2d 56, 60 (1980) (explaining the basic elements of agency).[7]

"The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Scott v. Purcell,* 490 Pa. 109, 117, 415 A.2d 56, 60 (1980).

"The burden of establishing agency rests upon the party asserting it . . . It is not necessary, however, to furnish direct evidence of the specific authority if it can be reasonably inferred from the circumstances of the case." *Id.* at 117 n.8, 415 A.2d at 62 n.8. For example, an inference may be drawn from "the relation of the parties to each other and their conduct with reference to the subject matter of the contract, that there was at least an implied intention to create the relationship of principal and agent." *Id.*

Once an agency relationship is created, a modification of that agency relationship "may occur when a principal acquiesces in conduct not included in the initial agreement." *Id.* at 117 n.9, 415 A.2d at 62 n.9.

---

7. Plaintiffs have not alleged that Cloister Gardens L.P. assigned its interest to RP Management Inc., but rather rely solely on an agency theory.

In this case, plaintiffs argue that Cloister Gardens L.P., the owner of the apartments, entered into a management agreement with RP Management Inc. and that, as a result, RP Management Inc. is Cloister Gardens L.P.'s agent.

Viewing the record "in the light most favorable to" plaintiffs, the court concludes that sufficient evidence exists to render Cloister Gardens L.P.'s relationship with RP Management Inc. "a genuine issue of material fact." *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 145, 615 A.2d 303, 304 (1992). Accordingly, the court denies defendant's motion for summary judgment as to Count III of the complaint which alleges that defendant is liable for breaching the lease.

### 3. *The "Pass Through" Provision*

In his motion for summary judgment and partial summary judgment, defendant questioned the validity of the "pass through" provision of the lease. Defendant raised this issue because plaintiffs' complaint appeared to rely on the portion of the lease, paragraph 14, entitled Condition of leased unit; Repair of damage, which states: "Resident agrees to pay as additional rent the cost of all other repairs, as soon as resident receives a bill from landlord. Resident must also pay landlord promptly for the cost of repairs to any part of the development for damage caused by resident or resident's visitors."

However, plaintiffs' memoranda have clarified that their complaint was based on the section of the lease, paragraph 14, which provides that "[r]esident must leave the leased unit clean and in as good condition as on the date this lease begins, except for ordinary wear and tear."

This section of paragraph 14 does not contain a "pass through" provision. Accordingly, defendant's third issue need not be considered, and his motion for summary judgment as to the "pass through" clause is denied.

### 4. *Insurable Interest*

Lastly, defendant questioned whether an insurance company subrogee may recover an amount in excess of the subrogor's insurable interest. Defendant raised this issue because he believed RP Management Inc. asserted a cause of action against defendant that was independent of any claim Cloister Gardens L.P. may retain.

However, plaintiffs' memorandum has clarified that RP Management Inc. claims to be the agent of Cloister Gardens L.P. This relationship renders RP Management Inc.'s insurable interest irrelevant. Accordingly, defendant's fourth issue will not be considered, and the court denies his motion for partial summary judgment that requested a limitation on plaintiffs' damages.

Therefore, the court enters the following:

### ORDER

And now, October 6, 2005, upon consideration of the motion of defendant Matthew D. Weaver for summary judgment on the issue of negligence, it is ordered that the motion is granted. The motions of defendant Matthew D. Weaver for summary judgment on the issues of breach of contract and the pass through clause are denied. The motion of defendant Matthew D. Weaver in the alternative for partial summary judgment on the issue of plaintiffs' damages is denied.