IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| LAURA L. MAAS, ADMINISTRATRIX OF THE ESTATE OF LISA CHRISTINE MAAS, DECEASED, | : | No. 7 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered June 29, |
| Appellee | : | 2018 at No. 185 WDA 2017, |
| | : | affirming the Order of the Court of |
| | : | Common Pleas of Allegheny County |
| v. | : | entered November 9, 2016 at No. |
| | : | GD-09-18900. |
| | : | |
| UPMC PRESBYTERIAN SHADYSIDE | : | ARGUED: October 16, 2019 |
| D/B/A WESTERN PSYCHIATRIC | : | |
| INSTITUTE AND CLINIC; WESTERN | : | |
| PSYCHIATRIC INSTITUTE & CLINIC; | : | |
| MICHELLE BARWELL, M.D.; AND | : | |
| WESTERN PSYCHIATRIC INSTITUTE & | : | |
| CLINIC ADULT COMMUNITY TREATMENT | : | |
| TEAM, | : | |
| | : | |
| Appellants | : | |

## OPINION

**JUSTICE DOUGHERTY**                    **DECIDED: JULY 21, 2020**

We consider the duty of mental health treatment providers to warn individuals who may be the subject of their patient's threats. In the present appeal, the mental health patient lived in a forty-unit apartment building and repeatedly told his doctors and therapists he would kill an unnamed "neighbor." Tragically, he ultimately carried out his threat, killing an individual who lived in his building, a few doors away from his own apartment. In subsequent wrongful death litigation filed by the victim's mother, the

providers argued they had no duty to warn anyone about their patient's threats because he never expressly identified a specific victim.  The trial court rejected this argument and denied the providers' motion for summary judgment, allowing the case to proceed to trial. On appeal, the Superior Court agreed, and we now affirm.

## I. Background

Prior to 2008, Terrance Andrews resided in a supported living facility under the supervision of and while receiving ongoing mental health treatment from appellants UPMC Presbyterian Shadyside d/b/a Western Psychiatric Institute and Clinic, Western Psychiatric Institute and Clinic ("WPIC"), the Western Psychiatric Institute and Clinic Adult Community Treatment Team ("CTT"), and  Michelle Barwell, M.D.  In January 2008, Andrews signed a one-year lease for an apartment on the fourth floor of Hampshire Hall in Pittsburgh.[1]  This move was facilitated by appellants WPIC and CTT, who paid rent on Andrews's behalf out of his psychiatric disability benefits through a representative payee service.  Andrews did not function well in the independent environment.  His treatment notes indicate his living situation was a stressor, apparently due, in part, to his unpleasant interactions with Hampshire Hall neighbors and/or their guests.  *See Maas v. UPMC Presbyterian Shadyside*, 192 A.3d 1139, 1142 (Pa. Super. 2018).  Andrews repeatedly

---

[1] Hampshire Hall consists of forty individual apartments and approximately eighty residents in total.  At all relevant times, approximately twenty persons including Andrews resided on the fourth floor.

complained to appellants about his housing circumstances and asked to be returned to a supported living environment with caregivers on-site.[2]

Specifically, for a period of five months after moving into Hampshire Hall, Andrews frequently expressed to appellants suicidal and homicidal ideation, complaining about his "neighbors" and others, including threats to kill a "neighbor" who had been knocking at his door in the middle of the night. *Id.* He reportedly had several verbal run-ins with various neighbors, one of which resulted in his next-door neighbor's boyfriend hitting him with a baseball bat. On May 9, 2008, he again reported homicidal ideation against a "neighbor" to staff at WPIC's Department of Emergency Care, and a plan to stab the "neighbor" with scissors, but he was allowed to leave. Within 24 hours, Andrews returned to the Department of Emergency Care and expressed homicidal ideation against an unnamed "next-door" neighbor, and a brief voluntary hospitalization ensued. *Id.* Following discharge, on May 15, 2008, he again described a plan "to kill the next-door neighbor and everyone." *Id.* Andrews did not identify any neighbor by name and appellants took no measures to warn any residents of Hampshire Hall regarding these threats.[3]

On May 25, 2008, Andrews again sought an in-patient admission at WPIC, asserting he had not been taking his medication for three weeks, was hearing voices, and

---

[2] On more than one occasion, in response to these requests, Andrews was told his return to supported living would be arranged, but it was not.

[3] Employees of both CTT and WPIC testified during discovery depositions that their practice was to ask any patient expressing homicidal ideation whether the patient could identify their purported target by name, but that Andrews did not name any specific person. *See* Deposition of William F. Brown, 1/30/15 at 71, 75; Deposition of Jonathan Hamlin, 5/24/16 at 17-18.

was having suicidal and homicidal thoughts. A case manager at that facility dissuaded him from seeking admission, and sent him home to his apartment with medication for agitation and a promise to secure him placement in a personal care home within 36 hours. Four days later, on May 29, 2008, Andrews murdered Lisa Maas, a nineteen-year-old Pennsylvania Culinary Institute student, by stabbing her to death with scissors in her apartment located five doors away from Andrews's own apartment on the fourth floor of Hampshire Hall. Andrews was arrested at the scene, telling officers, "Take me to jail. I did it[;]" and offered, "I told [a psychiatrist] to put me in Western Psych. I told them the medication wasn't working. I told people I was going to kill someone." Complaint, 8/23/12, at 12, ¶44-45; Police Report of Officer George Satler, 5/30/08 at 1. A jury subsequently convicted Andrews of murder and the trial court sentenced him to life imprisonment.

A.

Appellee Laura Mass, the victim's mother and administratrix of her estate, filed a wrongful death and survival action against appellants and others.[4] Among other things, the complaint alleged: "At the time of his discharge from Mercy Behavioral on May 13, 2008, Mr. Andrews presented clear and present danger to all Hampshire Hall tenants, particularly those who resided on the same floor as Mr. Andrews." Complaint, 3/4/11, at 6 ¶24. The complaint additionally alleged appellants were negligent in "failing to recognize the likelihood that Mr. Andrews was a danger to people living in his apartment complex, in particular, to those people living on his floor;" *id.* at 8 ¶31(j), and in failing to

---

[4] Delta Management, the owner of Hampshire Hall, was dismissed on a demurrer, and appellee discontinued her claims against Mercy Behavioral Health and Nadeem Ahmed, M.D.

warn those residents. *Id.* at ¶31(l) (asserting negligence "in failing to warn . . . Hampshire Hall tenants of the danger created by Mr. Andrews").

Following discovery, appellants filed a motion for summary judgment on the basis of *Emerich v. Phila. Ctr. for Human Dev., Inc.*, 720 A.2d 1032 (Pa. 1998). *Emerich* stands for the proposition that "under certain limited circumstances[,]" a mental health professional "owes a duty to warn a third party of harm against that third party." 720 A.2d at 1036. The *Emerich* Court held "the circumstances in which a duty to warn a third party arises are extremely limited." *Id.* at 1040. The patient must communicate a "specific and immediate threat" against "a specifically identified or readily identifiable victim." *Id.* Appellants asserted, and the parties do not dispute, Andrews never specifically named the decedent as the object of his homicidal ideation. Thus, appellants sought summary judgment because the allegedly amorphous, non-immediate threat against an unidentifiable "neighbor" or "neighbors" did not create a duty to warn. The trial court denied summary judgment, concluding there was "evidence in this case from which a jury could reasonably conclude the tenants residing on Andrews'[s] floor in Hampshire Hall were a readily identifiable group of people to whom [appellants] owed a duty to warn." Trial Court Op., 5/23/17 at 10-11. The trial court certified its order as involving a controlling question of law upon which there is a substantial difference of opinion pursuant to 42 Pa.C.S. §702, and the Superior Court granted an interlocutory appeal.

B.

The Superior Court determined appellee's complaint "made the requisite *prima facie* showing of a duty under *Emerich*." *Maas*, 192 A.3d at 1149. The panel recognized *Emerich* involved a threat to a specifically identified individual, and acknowledged "Mr.

Andrews expressly communicated threats to kill his 'neighbor' but did not identify, by name or description, the specific neighbor." *Id.* at 1148. Nevertheless, the panel recognized Andrews "threatened to kill an unidentified individual who was a member of an identifiable group of approximately twenty people." *Id.* Thus, the Superior Court framed the controlling question as whether appellants "had a duty to warn the potential targets, *i.e.*, the fourth floor tenants of Hampshire Hall who were Mr. Andrews's neighbors." *Id.*

Next, the panel noted *Emerich* relied on the seminal case of *Tarasoff v. Regents of Univ. of California*, 551 P.2d 334 (Cal. 1976). In *Tarasoff*, the patient did not expressly identify his threatened victim, but his therapist could "readily" identify who she was from the context of the threat; in litigation following her murder, the California Supreme Court held the therapist's failure to warn her breached a duty to use reasonable care to protect a third party from harm. 551 P.2d at 341. The Superior Court acknowledged the *Tarasoff* duty was subsequently limited in *Thompson v. County of Alameda*, 614 P.2d 728 (Cal. 1980), where the California Supreme Court determined there was no duty to warn a "large amorphous public group" in a particular neighborhood. *Maas*, 192 A.3d at 1145, *citing Thompson*, 614 P.2d at 738.[5] Nevertheless, the panel concluded, "[u]nlike the threat to

_____

[5] In *Thompson*, the plaintiffs, husband and wife and their minor son, lived a few doors from the residence of the mother of an incarcerated juvenile offender (James) who had "extremely dangerous and violent propensities" toward young children. *Thompson*, 614 P.2d at 730. James told staff at the juvenile facility "he would, if released, take the life of a young child residing in the neighborhood[,]" although he gave no indication of which young child he intended to victimize. *Id.* Within 24 hours of his release on temporary leave to his mother's home, he murdered plaintiff's son. The California Supreme Court declined to find a duty to warn, in part because "plaintiff's decedent was not a known, identifiable victim, but rather a member of a large amorphous public group of potential targets." *Id.* at 738.

all of the 'young children in the neighborhood' in *Thompson*, which we agree was a large and amorphous public group, the threat herein was directed at a member of a small, distinct, and identifiable group." *Maas*, 192 A.3d at 1148.

Noting the victim in *Tarasoff* was not named, but was readily identifiable, the panel reasoned "the duty to warn exists where the target is identifiable, not just identified by name, and that mental health professionals must use reasonable efforts to identify the victim. To give any other interpretation to our Supreme Court's holding in *Emerich* would negate the meaning of the 'readily identifiable' language entirely." *Id.* at 1147. The Superior Court further reasoned "[t]he duty to warn recognized in *Emerich* may extend to individuals who are readily identifiable because they are members of a group." *Id.* at 1147-48. The panel found support for this position "in the Code of Ethics of Pennsylvania's State Board of Psychology, section 41.61, which was relied upon by the *Emerich* Court in defining the duty. That provision states that psychologists should take 'reasonable measures to prevent harm when a client has expressed a serious threat or intent to kill or seriously injure an identified or **readily identifiable person or group of people** and when the psychologist determines that the client is likely to carry out the threat or intent.'" *Maas*, 192 A.3d at 1146, *quoting* 49 Pa.Code §41.61 (emphasis supplied by Superior Court).

The Superior Court further explained:

> We are persuaded by the analysis of then-Judge, now-Justice Wecht, when he overruled Mercy Behavioral Health's preliminary objection in the nature of a demurrer at an earlier stage of this litigation. He acknowledged that he found "no case law stating that the 'readily identifiable' third party can be a group, but also none to say it cannot be." Memorandum, 7/19/11, at 3. He went on to hypothesize that if a patient threatened to kill people in his workplace, "[t]hat would be a readily identifiable group whose members would be in serious danger[,]" and ['][a]rguably, a mental health provider would have a duty to warn."

*Id.* In his view, the facts alleged herein did not present a "bigger leap." *Id.*

*Maas*, 192 A.3d at 1148.[6]

The Superior Court determined the identities of Andrews's fourth-floor neighbors could be easily identified and the group was small enough that advising them about his threats would not "'produce a cacophony of warnings'" by their volume, unlike the prospect of warning an entire "'amorphous'" neighborhood. *Id.*, *quoting Thompson*, 614 P.2d at 735. Thus, the panel found "the facts herein to be more akin to *Emerich* and *Tarasoff*, where a duty to warn was imposed." *Id.* The Superior Court determined, in essence, appellants had a duty to warn the residents of the fourth floor of the apartment building, including the victim, about the threats. The panel affirmed the trial court's order denying appellants' motion for summary judgment, concluding appellee made a "*prima facie* showing of a duty under *Emerich*," and that whether appellants breached that duty was a question of fact for the jury. *Id.* at 1149.

C.

Appellants filed a petition for allowance of appeal and we granted discretionary review of the following issue:

> Can an "identifiable third party" for purposes of a mental health professional's duty to warn third parties consist of a group of unnamed neighbors under *Emerich* [ ], which limits a mental health professional's duty to warn to specific, imminent threats of serious bodily injury made against specifically identified or readily identifiable third parties?

*Maas v. UPMC Presbyterian Shadyside*, 202 A.3d 46 (Pa. 2019) (*per curiam*).

---

[6] Justice Wecht, as an Allegheny County Court of Common Pleas jurist, overruled the preliminary objections to the complaint of Mercy Behavioral Health, concluding although the question of the scope of duty was a close one, it was a question to be decided by a jury, and not by the court as a matter of law. As noted *supra* at 4 n.4, Mercy Behavioral Health is no longer a party to this action.

## II. Arguments

Appellants maintain the *Emerich* Court determined mental health professionals may be liable for violent acts of their patients only in the narrowest of circumstances where there is a specific and immediate threat against an identified or readily identifiable third party. They argue the Superior Court in this case expanded a mental health professional's duty to require a warning to a merely foreseeable victim. Appellants argue such expansion is unwarranted because a mental health provider's duty to warn under *Emerich* expressly requires the existence of a specific victim. *See Emerich,* 720 A.2d at 1037 n.5 ("we will only address the issue of protection in the context of a duty to warn the intended victim of danger"). Appellants concede that to be "readily identifiable," the victim need not be identified by name, and it is possible for a group of individuals to be readily identifiable. In appellants' view, however, the patient making threats must describe the victim(s) of his or her homicidal ideations with sufficient specificity to allow for identification and practical dissemination of a warning. They emphasize the victim must be easily ascertainable from the context of the patient's threat, and the threat must not be capable of multiple interpretations. *See* Brief for Appellants at 36 (providing that "[b]ased on commonly-accepted definitions, the term 'identifiable' connotes that the individual is capable of being determined and distinguished from other individuals who may fit the same description").

Applying that construct to this case, Appellants maintain that while Andrews episodically voiced threats of violence against his "neighbor," he never made any specific, imminent threat against Lisa Maas by name or personal description, and did not reveal homicidal ideations specifically relating to the collective group of tenants residing on the fourth floor of Hampshire Hall. According to appellants, when the Superior Court panel

recognized a duty here it improperly engaged in an analysis based on hindsight, reasoning that because Andrews made threats against his neighbor and Lisa Maas was his neighbor, she was a member of the class to whom a duty to warn was owed. They argue this reasoning is overly simplistic, and follows a "zone of danger" and "foreseeable victim" approach recognized only in a minority of jurisdictions, which the *Emerich* Court expressly rejected in favor of the "readily identifiable victim" construct. Brief for Appellants at 34-35.

Appellants posit that absent *post hoc* knowledge Andrews murdered Lisa Maas in her apartment down the hall from his residence, there was no way for a mental health professional to deduce prospectively that his homicidal ideations against his "neighbors" denoted only those individuals who resided on the fourth floor of Hampshire Hall. Appellants claim "neighbors" could have included any number of persons, including residents of the fourth floor, residents of other floors in the building, individuals who lived in apartment buildings adjacent to Hampshire Hall, or persons living on the same block in South Oakland.[7] Accordingly, Appellants conclude no practical method existed to discharge the duty to warn, as the mental health professional would have had to disseminate the warning to the public at large residing in close proximity to Hampshire Hall in the South Oakland area of Pittsburgh for it to be effective.

Appellants further maintain that Andrews's threat of violence against his "neighbor" is akin to the threat against "young children residing in the neighborhood" in *Thompson*, and, likewise, does not reveal a known, identifiable victim to whom a duty to warn is owed. *See Thompson*, 614 P.2d at 737 (threat of violence against "young children residing in the neighborhood" did not reveal a known, identifiable victim, but rather a member of a

---

[7] Appellants acknowledge Andrews expressed a desire to kill his "next-door" neighbor, arguably a readily identifiable individual, but note that Lisa Maas did not fit that description, as her apartment was five doors away.

large amorphous public group of potential targets to whom no duty to warn was owed). Appellants posit, "a member or members of a large amorphous public group, which is capable of multiple interpretations, is not an identifiable victim." Brief for Appellants at 42. Appellants additionally argue, "[t]o be identifiable, an individual must be capable of being identified by description, location or context — when a 'moment's reflection will reveal the victim's identity.'" *Id.*, *quoting Tarasoff*, 551 P.2d at 345 n.11. Thus, appellants insist, "[b]y imposing a rule that requires a warning issued to all members of a larger class of individuals, the Superior Court has rendered *Emerich's* readily identifiable limitation meaningless." *Id.*[8]

Appellants additionally highlight public policy considerations that militate against a broad interpretation of *Emerich*'s "readily identifiable" terminology. They contend confidentiality is the *sine qua non* of effective psychotherapy and public disclosure of every generalized threat would jeopardize the patient-therapist relationship. Appellants claim a broad duty to warn may fundamentally alter the nature of therapy as the therapist may focus more on the patient's dangerousness than on the treatment of his mental health needs. Additionally, appellants assert expanding the duty to warn to encompass vague threats of violence would result in the issuance of false warnings to a larger group

---

[8] Appellants further cite pre-*Emerich* Superior Court decisions, which declined to impose a duty to warn absent the specification of an identifiable victim. *See* Brief for Appellants at 27-30 (citing *Dunkle v. Food Service East*, 582 A.2d 1342, 1347 (Pa. Super. 1990) ("a psychologist (or psychiatrist) owes no duty to warn or otherwise protect a non-patient where the patient has not threatened to inflict harm upon a particular individual"); *Leonard v. Latrobe Area Hospital*, 625 A.2d 1228, 1232 (Pa. Super. 1993) ("the specific identity of an intended victim[ ] must be brought to the attention of the physician before it can be held that a physician has a duty to warn the intended victim"). Although the Superior Court's decisions in *Dunkle* and *Leonard* predated this Court's decision in *Emerich*, those intermediate appellate court decisions relied on *Tarasoff*, as did this Court in *Emerich*.

than necessary in the hopes that the right individual is apprised of the purported danger. This is in conflict, they contend, with this Court's pronouncement in *Emerich* that, "[e]ven if possible, warnings to the general public would produce a cacophony of warnings that by reason of their sheer volume would add little to the effective protection of the public." *Emerich*, 720 A.2d at 1041 (internal citation and quotation omitted). Appellants submit the additional exposure to liability will force mental health professionals to practice defensive medicine through the over-commitment of patients into institutions in contravention of *Emerich's* requirement that "patients be placed in the least restrictive environment[.]" Brief for Appellants at 51 (citing *Emerich*, 720 A.2d at 1039; 50 P.S. §7102 ("in every case, the least restrictions consistent with adequate treatment shall be employed")).[9]

In response, appellee maintains the Superior Court's decision fits squarely within the *Emerich* test, and, therefore, the denial of appellants' motion for summary judgment

---

[9] The American Medical Association, Pennsylvania Medical Society, and Pennsylvania Psychiatric Society have filed a Brief of *Amicus Curie* in support of appellants. Therein, they contend the legal framework for treating patients with mental illnesses has developed over decades to balance carefully the rights of the mentally ill with the need to protect the public. In the view of *amici*, the Superior Court's decision to lower liability standards would interfere with the General Assembly's well-crafted regulatory scheme, which seeks the least restrictive means for treating mentally ill patients, ensures patient confidentiality, and insulates from liability mental health providers' determinations as to whether a patient should be integrated into society or admitted to a mental health facility. *See* 50 P.S. §§ 7107, 7111, and 7114. They further contend that any legal duty to interrogate a patient to determine who the patient's threatened victim is and whether the patient has the intent and plan to carry out his homicidal ideations, is contrary to this Court's pronouncement in *Emerich* and would prove unworkable. Finally, *amici* assert, incentivizing mental health professionals to put liability concerns over patient care would reduce overall safety by increasing costs and causing some mental health professionals to relocate to jurisdictions with more favorable medical negligence laws.

was proper. Appellee refutes appellants' contention the Superior Court improperly expanded *Emerich*'s duty to warn to include "foreseeable victims" in addition to readily identifiable ones. In defining "readily identifiable," appellee submits the Superior Court properly held "the duty to warn exists where the target is identifiable, not just identified by name[.]" *Maas*, 192 A.3d at 1147. She maintains a "readily identifiable" third party is a party the mental health professional can identify, name, or recognize.

Applying that construct here, appellee contends the twenty individuals who resided on the same floor as Andrews were readily identifiable as a small and distinct group who were targeted by his repeated threats. She emphasizes the history of the extensive relationship between Andrews and appellants, including his repeatedly expressed desire to be removed from Hampshire Hall and the nature of the threats he communicated, which included specific threats to "his neighbor," his "next-door neighbor," "the neighbor who knocks on [his] door in the middle of the night," the "next-door neighbor with whom he had a physical altercation," and the "next-door neighbor's boyfriend." Brief for Appellee at 32. Appellee argues these threats were sufficiently clear to identify the subject of Andrews's homicidal ideations as the Hampshire Hall neighbors who lived in close proximity to him and with whom he interacted, rather than a general threat to the public at large. Appellee argues the Superior Court's holding is limited to the facts of this case and did not expand the duties imposed upon mental health professionals under *Emerich*.[10]

_____

[10] Appellee recognizes that while the evidence of record arguably would "support a finding that all residents of Hampshire Hall should have been warned," the Superior Court's decision extending the duty to warn the fourth-floor neighbors only refutes appellants' "position that the Superior Court has effectively abandoned *Emerich's* restrictive

Appellee further asserts the feasibility of issuing a warning under a particular factual scenario has no bearing on the determination of whether the target of the patient's threat was readily identifiable, and this Court's allowance of appeal was limited to the latter inquiry not the former. Moreover, appellee submits the Superior Court expressly discerned from the record that a mental health professional could, as a practical matter, have disseminated a warning here. Brief for Appellee at 31-32 (citing *Maas*, 192 A.3d at 1148) (finding that "[p]ractically speaking, the identities of Mr. Andrews's fourth floor neighbors could be readily ascertained from the building management in order to communicate a reasonable warning" and that "the proximity of their apartments to Mr. Andrews's apartment made it possible to warn these individuals even without knowing their names"). Thus, she concludes, there would be no "cacophony of warnings", as suggested by appellants. Appellee submits the Superior Court correctly held "mental health professionals must use reasonable efforts to identify the victim." *Maas*, 192 A.3d at 1147. Appellee explains, "[t]here is no dispute that, by their own admissions, [appellants] were obligated and had a duty to conduct a proper homicidal ideation assessment of every threat Andrews made against a potential third party victim, including threats he was making against his neighbors, and properly inquire about the identity of these intended victims." Brief for Appellee at 33.

In their reply brief, appellants reiterate, *inter alia*, that to recognize a duty to warn based upon homicidal ideations against a "neighbor" would fracture the mental health professional's therapeutic relationship with the patient, nullify the patient's right to privacy,

approach and adopted a new duty to warn all foreseeable victims." Brief for Appellee at 25 n.5.

and invite retributive ligation. Appellants assert that, in an urban setting, the term "neighbor" is so vague, indefinite, and imprecise that it conflicts directly with the precision and specificity demanded by *Emerich*. Appellants strongly contest what they view as appellees' suggestion that a mental health professional has a legal duty to "interrogate" a patient to determine the subject of his homicidal ideations. They characterize such a duty as "so at odds with *Emerich* as to be preposterous." Reply Brief for Appellants at 1.[11] Finally, appellants maintain, contrary to appellee's assertions, it would be absurd for this Court to recognize a duty, in any context, without consideration of whether it is feasible for the defendant to discharge the duty.

### III. Analysis

We begin by noting our standard of review. Summary judgment is appropriate in cases "where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Nicolaou v. Martin*, 195 A.3d 880, 891 (Pa. 2018) (citing Pa.R.Civ.P. 1035.2(1)). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.* Moreover, the existence of a duty is a question of law, while the issue of whether the defendant breached that duty is generally for the fact-finder. *Emerich,* 720 A.2d at 1044. We are presently concerned with the nature of the duty owed to Lisa Maas, if any, which is a legal question over which our

---

[11] As discussed *infra*, we reject appellants' contention the Superior Court created a "duty to interrogate" mental health patients who express homicidal ideation, a question that is not directly implicated in this appeal in any event.

standard of review is *de novo,* and our scope of review is plenary. *Seebold v. Prison Health Services, Inc.*, 57 A.3d 1232, 1243 (Pa. 2012).

As an initial matter, we reject appellants' assertion the Superior Court improperly held, where a potential victim is not identified by name, the mental health professional has a duty to "interrogate" the patient in an effort to discover the victim's identity. *See* Brief for Appellants at 23, 41 n.8. Appellants' assertion is apparently grounded in an expansive reading of a single sentence in the Superior Court's opinion: "[w]e find that the duty to warn exists where the target is identifiable, not just identified by name, and that mental health professionals must use reasonable efforts to identify the victim." *Maas*, 192 A.3d at 1147. The panel never opined "interrogation" is required, only that reasonable efforts at identification be made. Moreover, the sole legal issue before the Superior Court was whether the trial court misapplied the law when it refused to dismiss appellee's wrongful death action on summary judgment, and "improperly imposed on mental health care providers a duty to warn about vague, non-specific, and non-imminent expressions of homicidal ideations[.]" *Id.* at 1144 (internal quotation omitted).

Notably, the ancillary factual question regarding the nature of any effort appellants employed (or did not employ) to identify whom Andrews was threatening is not before this Court. Instead, for purposes of determining if appellants had a duty to warn Lisa Maas, we consider whether a "moment's reflection" by appellants would have sufficed to readily identify Andrews's unnamed neighbor-victim as a Hampshire Hall resident, and whether imposing a duty to warn under such circumstances is warranted. *See, e.g., Tarasoff*, 551 P.2d at 345 n.11 ("[Therapists and their *amicus*] also argue that warnings must be given only in those cases in which the therapist knows the identity of the victim. We recognize

that in some cases it would be unreasonable to require the therapist to interrogate his patient to discover the victim's identity, or to conduct an independent investigation. But there may also be cases in which a moment's reflection will reveal the victim's identity. The matter thus is one which depends upon the circumstances of each case, and should not be governed by any hard and fast rule.").

*Emerich* is this Court's seminal case setting forth a mental health professional's duty to warn third parties. The facts underlying *Emerich* were that, in the space of thirty minutes, a psychiatric patient (Joseph) told his therapist he was going to kill his former girlfriend, identified by Joseph and known to the therapist as Teresa Hausler. The therapist immediately advised Hausler to stay away from Joseph, without specifically telling her he planned to kill her. Hausler ignored the therapist's warning to stay away and Joseph shot her to death. Ultimately, the *Emerich* Court determined the therapist had a duty to warn Hausler, satisfied the duty by telling her to stay away, and affirmed the dismissal of the case on summary judgment. *Emerich*, 720 A.2d at 1045. The Court summarized its holding as follows:

> [I]n Pennsylvania, based upon the special relationship between a mental health professional and his patient, when the patient has communicated to the professional a specific and immediate threat of serious bodily injury against a specifically identified or readily identifiable third party and when the professional, determines, or should determine under the standards of the mental health profession, that his patient presents a serious danger of violence to the third party, then the professional bears a duty to exercise reasonable care to protect by warning the third party against such danger.

*Id.* at 1043.

The *Emerich* Court began its legal analysis by observing the general common-law rule stating there is no duty to control the conduct of a third party to protect another from

harm. *Emerich*, 720 A.2d at 1036. *Emerich* recognized an exception to that rule: "where a defendant stands in some special relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct, which gives to the intended victim a right to protection." *Id.* (*citing* Restatement (Second) of Torts § 315 (1965)). Relying in part on *Tarasoff*, the *Emerich* Court concluded the special relationship between a patient and mental health professional may, in limited circumstances, give rise to an affirmative duty to warn a third party of potential harm caused by his patient. *Id.* at 1037.

In *Tarasoff*, as we have noted, the patient did not expressly identify his threatened victim by name, but from the context of the threat, the therapist could "readily identify" who she was. *Emerich*, 720 A.2d at 1036.[12] The *Emerich* Court explained *Tarasoff* recognized a duty to "protect" a readily identifiable third party from the violent acts of a patient, and that "a duty to warn is subsumed in this broader concept of a duty to protect." *Emerich*, 720 A.2d at 1037 n.5. "'The discharge of this duty may require the therapist to take one or more of various steps, depending on the nature of the case. Thus, it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.'" *Id.*, *quoting Tarasoff*, 551 P.2d at 340. The *Emerich* Court addressed the issue of duty only "in the context of a duty to warn[,]" and left for another day whether "some broader duty to protect" should be recognized. *Id.* Specifically regarding the duty to warn, the *Emerich* Court stated: "We find, in accord with *Tarasoff*, that a mental health professional who determines, or under the standards of the mental health profession,

---

[12] The opinion did not specify how or why the unnamed victim was readily identifiable.

should have determined, that his patient presents a serious danger of violence to another, bears a duty to exercise reasonable care to protect by warning the intended victim against such danger." *Emerich*, 720 A.2d at 1040.

Notably, the *Emerich* Court further held "the circumstances in which a duty to warn a third party arises are extremely limited." *Id.* at 1040. Before the therapist's duty is triggered, the patient must communicate a "specific and immediate threat" against "a specifically identified or readily identifiable victim." *Id.* The Court did not define what factors might coalesce to ascertain, or aid in determining, whether or when an unnamed victim is readily identifiable, but the Court offered parenthetically that *Thompson* subsequently "limited" the holding in *Tarasoff* to "identifiable victims[.]" *Id.* at 1041, *citing Thompson*, 614 P.2d 728. As we have summarized, in *Thompson*, the California Supreme Court held there was no duty to warn the "public at large" of threats to unidentified persons in a particular neighborhood. The *Thompson* court declined to recognize a duty to warn, in part because "plaintiffs' decedent was not a known, identifiable victim, but rather a member of [a] large amorphous public group of potential targets." *Thompson*, 614 P.2d at 738. The *Emerich* Court noted, "as a practical matter, a mental health care professional would have great difficulty in warning the public at large of a threat against an unidentified person. Even if possible, warnings to the general public would 'produce a cacophony of warnings that by reason of their sheer volume would add little to the effective protection of the public.'" *Id.* at 1041, *quoting Thompson*, 614 P.2d at 735.

In the present case, appellants concede there is a duty to warn "readily identifiable" potential victims. Appellants also allow that a victim need not be identified by name to be

"readily identifiable," and victims might be readily identifiable by membership in an enumerated and identifiable "group" of individuals. Appellants' core contention, then, is that the "neighbors" against whom Andrews articulated murderous threats were not an enumerated and readily identifiable group of Hampshire Hall residents, but instead, consisted of a large, amorphous, unidentifiable group of the public at large. The plausibility of this argument is strained as it entirely disregards the undisputed factual context in which the threats were made.

The record easily supports the trial court's conclusion that living in Hampshire Hall was a "stressor" for Andrews. *See* Trial Court Op., 5/23/17 at 9 ("There is evidence that Andrews'[s] primary stressor was [appellants'] removing him from an assisted living arrangement in a personal care home and relocating him to Hampshire Hall in early January of 2008."). It is also undisputed that, during the period when Andrews repeatedly sought transfer out of Hampshire Hall and back to a supported living facility, he repeatedly told appellants he would kill his "neighbors." Moreover, viewing the summary judgment record in the light most favorable to appellee as the non-moving party, *see Nicolaou*, 195 A.3d at 891, it is clear that appellants might have surmised, on "a moment's reflection," *see Tarasoff*, 551 P.2d at 345 n.11, that Andrews was targeting residents of his apartment building specifically, and particularly those on his floor with whom he interacted or had greater opportunity to interact. Indeed, Andrews referred on multiple occasions to "next-door neighbors," and a "neighbor" who knocked on his door in the "middle of the night." Under the undisputed facts of the current record, it cannot reasonably be said that when Andrews threatened to kill a "neighbor," he was uttering an ambiguous threat against an

"amorphous group" of the public at large, residing in the urban South Oakland section of Pittsburgh generally, rather than one of his neighbors residing in Hampshire Hall.

The *Emerich* Court, when defining the duty to warn, relied in part upon Section 41.61 of the Code of Ethics of Pennsylvania's State Board of Psychology, which provides that psychologists should take "reasonable measures to prevent harm when a client has expressed a serious threat or intent to kill or seriously injure an identified or readily identifiable person or **group** of people[.]" *Emerich*, 720 A.2d at 1042, *quoting* 49 Pa.Code §41.61 (emphasis added). The trial court and the Superior Court thus properly determined the duty to warn applies not only when a specific threat is made against a single readily identifiable individual, but also when the potential targets are readily identifiable because they are members of a specific and identified group — in this case, "neighbors" residing in the patient's apartment building. In these circumstances, the potential targets are not a large amorphous group of the public in general, but a smaller, finite, and relatively homogenous group united by a common circumstance. Surely, Lisa Maas was a member of such a group relative to Andrews, and described in the complaint as "all Hampshire Hall tenants, particularly those who resided on the same floor as Mr. Andrews." Complaint, 3/4/11, at 6 ¶24.

## IV. Conclusion

Accordingly, we conclude the trial court did not err when it denied appellants' motion for summary judgment. Moreover, the Superior Court correctly determined that the legal principles set forth in *Emerich* indicate appellants had a duty to warn "readily identifiable" victims, and the present record supports a finding that Lisa Maas, who was

a neighbor who resided on the same floor of Hampshire Hall as Andrews, was just such a "readily identifiable" victim. We therefore affirm the order of the Superior Court.

Justices Todd and Mundy join the opinion.

Justice Baer files a dissenting opinion in which Chief Justice Saylor joins.

Justice Donohue and Wecht did not participate in the consideration or decision of this case.